673 P.2d 912

Daniel C. DeBOER, M.D., Petitioner,

v.

The Honorable Michael J. BROWN, Pima County Superior Court Judge; and Calvin L. Dotson, et al., Real Parties in Interest, Respondents.

No. 16566–PR.

Supreme Court of Arizona,
In Banc.

Nov. 16, 1983.

Reconsideration Denied Jan. 4, 1984.

Chandler, Tullar, Udall & Redhair by Jack Redhair, Tucson, for petitioner.

Bolding & Zavala by Ed Bolding, Michael B. Grayson and Frederick S. Klein, Tucson, for real parties in interest Dotson.

Snell & Wilmer by John J. Bouma and Preston H. Longino, Jr., Phoenix, for amicus curiae, Arizona Medical Ass'n, Inc.

Lewis & Roca by Roger W. Kaufman, Phoenix, for amicus curiae, Arizona Hosp. Ass'n.

Hoffmann, Salcito, Stevens & Myers by Frank Verderame, Phoenix, for amicus curiae, Arizona Trial Lawyers, Assoc.

GORDON, Vice Chief Justice:

The facts before us are uncontested for purposes of this review. In August, 1976, Calvin L. Dotson, the plaintiff below, was being treated for various skin problems by dermatologist Daniel C. DeBoer, M.D., the defendant below. DeBoer excised a skin sample from a lesion on Dotson's back. The sample was mounted onto a slide, examined by DeBoer, and diagnosed as a compound nevus or common wart. Dotson was told of the diagnosis and that he need not undergo further examination or treatment of the "wart." From August, 1976 until April, 1980, Dotson neither saw nor felt any change in the lesion. The lesion had, however, begun to grow internally sometime during 1979. In April, 1980, physicians treating Dotson for an unrelated condition diagnosed the lesion as a malignant melanoma, a tumor with a "marked tendency to metastasis," Dorland's Illustrated Medical Dictionary 790 (26th ed. 1981). The slide made by DeBoer in 1976 was reexamined and revealed that the lesion had been a melanoma when initially evaluated by DeBoer. Dotson's chances for five year survival given appropriate medical treatment had decreased from 95% in 1976 to only 50–75% in 1980.

In September, 1981, Dotson filed a medical malpractice action against DeBoer based on DeBoer's misdiagnosis. DeBoer subsequently filed a motion for summary judgment asserting that the action was barred by the three-year statute of limitations provided by A.R.S. § 12–564.[1] The trial court, acknowledging that none of the exceptions enumerated in subsections B, C, or D applied, nevertheless denied DeBoer's summary judgment motion. The denial was based on the court's finding that A.R.S. § 12–564 was unconstitutional as a violation of due process because it "does not provide a reasonable time within which an action for medical malpractice against a health care provider can be brought * * *." DeBoer challenged the denial in a special action petition to the Court of Appeals. That court found no constitutional infirmity and ordered the action dismissed. *DeBoer v. Brown*, 138 Ariz. 178, 673 P.2d 922 (App. 1983). Petition for review was made to this Court. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5 and Ariz.R.Civ. App.P. 23. The Court of Appeals' decision is vacated. The trial court's order denying summary judgment is reinstated for the reasons stated herein.

We need not reach the serious constitutional issues raised and argued by the parties. Rather, we find the issue of whether Dotson's complaint was timely filed to be determinative. A.R.S. § 12–564 prescribes a three-year statute of limitations for medical malpractice actions. The three-year period begins to run on the "date of injury." We find that, in this case, Dotson's "injury" occurred in 1979 when his "wart" began to grow and that the complaint was, therefore, timely filed.

1. "§ 12–564. Health care injuries; limitations of actions; exception

"A. A cause of action for medical malpractice against a licensed health care provider accrues as of the date of injury and shall be commenced and prosecuted within three years after the date of injury. In no event shall the time for commencement of legal action exceed three years from the date of injury except as provided in subsections B, C and D.

"B. In an action based on injury through the leaving of a foreign object having no therapeutic, diagnostic or other medical reason for remaining in the patient's body, the period of limitations shall be tolled until the discovery of the foreign object or when the foreign object, with the exercise of reasonable diligence, should have been discovered, whichever occurs first.

"C. In an action where a defendant or an agent of a defendant has intentionally prevented the discovery of an injury caused by that defendant by concealing or misrepresenting facts about the injury, the period of limitations shall be tolled from the date of the injury until the discovery of the injury or the time when, with the exercise of reasonable diligence, it should have been discovered, whichever occurs first.

"D. Notwithstanding the provisions of § 12–502, in an action on behalf of a minor injured under the age of seven, the applicable period of limitations begins to run when the minor reaches his or her seventh birthday or on death, whichever occurs earlier."

██ DeBoer argues that the "injury" occurred and the three-year period began on the date of his alleged malpractice. Such an argument equates the "date of injury" with the "date of malpractice" and would bar the instant suit. As support for this argument, DeBoer cites *Landgraff v. Wagner,* 26 Ariz.App. 49, 546 P.2d 26, *appeal dismissed,* 429 U.S. 806, 97 S.Ct. 40, 50 L.Ed.2d 67 (1976) and *Russo v. Diethrich,* 126 Ariz. 522, 617 P.2d 30 (App.1980), both of which construed former A.R.S. § 12–542(B), the predecessor to the current statute. However, neither *Landgraff* nor *Russo* mandates a conclusion that the "date of injury" is necessarily always the date of the alleged malpractice. *Landgraff, Russo,* and the instant case confront different situations, but each is consistent with the other two in holding that the "injury" is the damaging effect sustained by the plaintiff-patient. In *Landgraff,* a woman sued two physicians more than nine years after a six-inch steel clamp had been left in her abdomen. The Court of Appeals found that the plaintiff was damaged, the "injury" occurred, and the statutory period began to run at the time the foreign object was negligently left inside the plaintiff-patient. DeBoer aruges that, therefore, the "date of injury" means the date of the negligent treatment in all medical malpractice cases. We do not believe *Landgraff* should be read so broadly. Indeed, the *Landgraff* court itself stated:

> "it appears clear that the legislature intended the date of injury *in this type of case* to be the date on which the foreign object was left within the patient's body (emphasis added)."

*Landgraff, supra,* 26 Ariz.App. at 55–56, 546 P.2d at 32–33.[2] In *Russo,* the injury complained of was an unnecessary surgical procedure. Given that fact, the Court of Appeals found that the plaintiff was damaged and the "injury" was suffered "when [the patient] went under the surgeon's knife, * * * not * * * when he learned of the ultimate consequences of that surgery." *Russo, supra,* 126 Ariz. at 525, 617 P.2d at 33. Thus, while *Landgraff* and *Russo* equate the "date of injury" with the "date of the malpractice" in the situations at issue in those cases, neither is inconsistent with our holding today that Dotson was damaged, his "injury" was sustained, and the statute of limitations began to run when his "wart" began to grow in 1979.

██ We acknowledge that in the majority of medical malpractice claims, the damage and the "injury" will indeed occur contemporaneously with the malpractice. However, we also realize that there are some cases, the instant case being one, where there is no damage and no "injury" at the time of the malpractice. *See, e.g., Repp v. Hahn,* 45 Or.App. 671, 609 P.2d 398 (1980); *Olson v. St. Croix Valley Memorial Hospital, Inc.,* 55 Wis.2d 628, 201 N.W.2d 63 (1972). Where a medical malpractice claim is based on a misdiagnosis or a failure to diagnose a condition, the "injury" is not the mere undetected existence of the medical problem at the time the physician misdiagnosed or failed to diagnose it. Nor is the "injury" the mere continuance of the same problem in substantially the same state or the leaving of the patient "at risk" of developing a more serious condition. Rather, the "injury" is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. *Augustine v. United States,* 704 F.2d 1074 (9th Cir.1983); *Repp v. Hahn, supra. Cf.* W. Prosser, Handbook of the Law of Torts § 30 at 143 (4th ed. 1971) ("Nominal damages, to vindicate a technical right, cannot be recovered in a negligence action, where no actual loss has occurred. The threat of future harm, not yet realized, is not enough [footnotes omitted].") In the case before

---

**2.** The *Landgraff* court summarized its discussion of the statute of limitations issue by stating "[t]he 'date of injury' then is the date the claimed negligent conduct first was imposed upon the patient. The time is not measured from the point at which damages resulting from the 'injury' either appear or disappear." 26 Ariz.App. at 56, 546 P.2d at 33. Though this statement is not expressly limited to foreign object cases, that is the type of case the Court of Appeals had before it. This conclusory language should not be read more broadly.

us, Dotson was damaged and his "injury" occurred when the misdiagnosed lesion began to grow and threaten his life expectancy, not when the misdiagnosis occurred.

We are supported in our interpretation of the word "injury" by the California appellate courts. The phrase "date of injury" was carried into the current Arizona statute of limitations from the statute which preceded it. The earlier Arizona statute was adopted from the California malpractice statute then in use, Cal.Civ.Proc.Code § 340.5, 1970 Cal.Stat. ch. 360, p. 772, § 1 (amended 1975). Because our statute was adopted from California, that state's cases construing its statute are persuasive. *See Cottonwood Development v. Foothills Area Coalition,* 134 Ariz. 46, 653 P.2d 694 (1982). The California Supreme Court has held that the word "injury" is

"a word of art which might refer to an event occurring some time after the commission of 'wrongful act.'[11]

"[11] Thus the word 'injury,' as used in section 340.5 to denote the start of the four-year limitation period, seems clearly to refer to the damaging effect of the wrongful act and not to the act itself."

*Larcher v. Wanless,* 18 Cal.3d 646, 655–56, 135 Cal.Rptr. 75, 80, 557 P.2d 507, 512 (1976). *See also Christ v. Lipsitz,* 99 Cal. App.3d 894, 160 Cal.Rptr. 498 (1979); *Tresemer v. Barke,* 86 Cal.App.2d 656, 150 Cal. Rptr. 384 (1978).

Our interpretation of the word "injury" is also consistent with the intent of the Arizona State Legislature. In hearings on the former limitations statute, our House of Representative's Committee on Health (now the Committee on Health and Aging) considered a motion to change the phrase "date of injury" to "date of malpractice." After discussion, that motion was withdrawn. The statute was adopted setting the accrual of the malpractice cause of action as the date of "injury."

DeBoer and *amicus* Arizona Hospital Association argue that this interpretation of the phrase "date of injury" would reinstate the discovery rule for medical malpractice cases. They assert that to do so would contravene the clear intent of the Legislature. We agree that in enacting the former A.R.S. § 12–542(B) (now A.R.S. § 12–564), our Legislature limited the broad discovery rule that had been adopted in *Mayer v. Good Samaritan Hospital,* 14 Ariz.App. 248, 482 P.2d 497 (1971). We also agree that the enactment of the current A.R.S. § 12–564 limited the discovery rule further. However, we do not agree that our decision today reinstates the discovery rule. Dotson's suit was filed in September of 1981, well within three years from the date of his "injury." We are not presented with the case where, for example, a misdiagnosis of a malignant melanoma was made in 1975, the melanoma started growing in 1976, the melanoma was properly diagnosed in 1980, and the malpractice suit was filed immediately. The resolution of the issues posed by such facts must await future consideration.

The decision of the Court of Appeals is vacated. The order of the trial court denying DeBoer's summary judgment motion is reinstated. The matter is remanded to the trial court for further proceedings.

HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.