# CIRCUIT COURT OF THE CITY OF NORFOLK

James A. Morton

v.

Pamela J. Gray

August 1, 2001

Case No. L00-2627

BY JUDGE MARC JACOBSON

In this medical malpractice action, James A. Morton alleges that Pamela J. Gray, M.D., misdiagnosed his gout as arthritis and, as a result, prescribed inappropriate medication that allegedly worsened the existing undetected disease. *See* Amended Motion for Judgment (Motion), ¶¶ 4, 5. Defendant filed a Motion to Dismiss based upon the applicable statute of limitations. *See* Defendant's Motion to Dismiss (Motion to Dismiss).

Defendant alleges that Plaintiff's original Motion for Judgment filed on October 27, 2000, was filed more than two years past the date she last treated Plaintiff on April 22, 1997. *See id.* The applicable statute of limitations allows Plaintiff up to two years to file his Motion after "accrual" of the claim. *See* Va. Code § 8.01-243. Although Va. Code § 8.01-230 defines "accrual" as "the date injury is sustained in the case of injury to the person," Defendant bases her argument upon case law based upon the "continuing treatment" rule. Under this rule, for purposes of the applicable statute of limitations, a medical malpractice plaintiff need not file suit against a treating physician until a full course of treatment has been completed. *See Farley v. Goode*, 219 Va. 969, 252 S.E.2d 594 (1979), and *Fenton v. Danaceau*, 220 Va. 1, 255 S.E.2d 349

(1979). Under that doctrine, Defendant argues, Plaintiff had, at most, two years from the last date of Defendant's treatment within which to file a lawsuit. *See id.* Because the suit was filed more than two years after that date, Defendant argues that it is untimely and violates the applicable statute of limitations.

Plaintiff argues that his case falls within the purview of a relatively recent line of cases dealing with medical misdiagnoses. In these cases, the Virginia Supreme Court has held that the statute of limitations begins to run not upon the last date of treatment, or even upon the misdiagnosis itself, but upon the date at which the plaintiff's disease becomes malignant or significantly more difficult to treat. Plaintiff cites the case of *Lo v. Burke*, 249 Va. 311, 455 S.E.2d 9 (1995), in which case, the plaintiff sued a radiologist for the failure to detect a pancreatic cyst on a CT scan. Almost two years after the CT scan was taken, the defendant reexamined the scan and found the cyst. By that time, the cyst had become malignant and had grown two centimeters in size. The defendant moved for summary judgment on the basis that the plaintiff filed his motion more than two years after the defendant failed to detect the cyst.

The Court discussed that, under Va. Code § 8.01-230, the statute of limitations for the plaintiff's claim did not begin to run until "accrual," meaning the date the plaintiff's injury was sustained. In arguing that the statute of limitations had run, the defendant argued that the date of injury was when the defendant failed to detect the cyst that eventually progressed into cancer. The Court disagreed, holding that the plaintiff did not suffer any "injury" on the date of the misdiagnosis, rather, the plaintiff was injured when the cyst became malignant. As such, the statute did not begin to run until some date after the misdiagnosis. The Court went on to detail that the defendant offered no evidence to show on what date the cyst had become malignant and accordingly could not meet her burden of proof on the issue of the statute of limitations. *See id.*

In *St. George v. Pariser*, 253 Va. 329, 484 S.E.2d 888 (1997), the Virginia Supreme Court examined a case in which the defendant physician failed to diagnose a mole on the plaintiff's skin as cancerous. A subsequent biopsy detected the malignancy, whereafter the plaintiff initiated suit. The defendant filed a plea of the statute of limitations, and the Court applied the rationale in *Lo* to deny the plea. The Court detailed the applicable statutory provisions, in that the plaintiff's claim accrues only upon injury. The Court then explained that between the plaintiff's misdiagnosis and her eventual correct diagnosis, the cancer had become capable of metastasizing. The court concluded that the plaintiff suffered an injury only when the cancer changed

in character from "biologically benign" to a disease that could recur. Thus, the injury occurred at a date later than the misdiagnosis. The Court stated:

> In every misdiagnosis case, the patient has some type of medical problem at the time the physician is consulted. But the injury upon which the cause of action is based is not the original detrimental condition; it is the injury which later occurs because of the misdiagnosis and failure to treat. . . . "Where a medical malpractice claim is based on a misdiagnosis or failure to diagnose a condition, the 'injury' . . . is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment."

*Id.* at 334, *citing DeBoer v. Brown*, 673 P.2d 912, 914 (Ariz. 1983). Because the defendant could not prove on what date the plaintiff was injured by the misdiagnosis, the plea was denied. *See id.*

Both the *St. George* and *Lo* courts determined that a misdiagnosis does not immediately cause any physical injury to a potential plaintiff; rather, it is when an undiagnosed condition changes in character to become more injurious that a plaintiff suffers an injury attributable to the misdiagnosis. When this harm occurs, the plaintiff has suffered an "injury" under the applicable statute, and the limitations period begins. Also, in both *Lo* and *St. George*, the Court discussed that once the plaintiff alleges facts sufficient to place his claim within the applicable statute of limitations as under these misdiagnosis cases, it becomes the defendant's burden to refute the alleged facts to prove that the suit was untimely filed. *See id.*

In this case, Plaintiff has alleged that he sought treatment with Defendant beginning on May 30, 1996, and continuing monthly for approximately one year until on or about April 22, 1997. *See* Bill of Particulars, ¶¶ 1-2. He also alleges that during that time period, Defendant failed to diagnose him as having gout. *See* Motion, ¶ 2. Plaintiff further alleges that Defendant's "negligent misdiagnosis of [Plaintiff] caused a delay in proper diagnosis and treatment of [Plaintiff's] gout. Due to [Defendant's] negligence, [Plaintiff's] gout spread and irreparably damaged numerous joints in his body." *See* Motion, ¶ 3. Plaintiff contends that had the gout been diagnosed during the course of treatment, it would have been less damaging and more easily treated. *See* Plaintiff's Brief in Opposition to Motion to Dismiss at 1.

The gravamen of Defendant's argument is that the plaintiff "has suffered no new injury" because he had already been diagnosed with gout at the time he first was treated by Defendant. *See* Defendant's Brief in Support of Motion

to Dismiss at 2. To this end, Defendant argues that since Plaintiff suffered from gout at the time of the misdiagnosis, "the allegation of injury is the onset of gout . . . despite the fact that greater damage may be sustained at a later date." *See id.* at 3. Additionally, Defendant argues that *Lo* and *St. George* are inapposite to the instant case because they involve cancer instead of gout, which "does not alter form and become malignant." *See id.* at 6.

Although Plaintiff admits he has been diagnosed with gout in the past, it could be argued that his claim is not necessarily defeated by that admission. *See* Plaintiff's Reply to Defendant's Supplemental Motion to Dismiss, ¶ 1. In examining Defendant's Motion to Dismiss, the Court must look at the facts alleged by Plaintiff in the same way as the Court would examine a motion for summary judgment; i.e., in the light most favorable to the non-moving party. *See Gay v. Norfolk and Western Ry.*, 253 Va. 212, 483 S.E.2d 216, n. 3 (1997) (examining a motion to dismiss as a summary judgment motion, "regardless of the label" placed on the motion). Even if Plaintiff knew he had gout at the time he began being treated by Defendant, it could be argued that Defendant's failure to so diagnose him herself might or possibly could have led to the damage of which Plaintiff complains. The fact that Plaintiff himself knew of his condition might arguably make him contributorily negligent; however, Plaintiff has alleged facts sufficient to overcome the Motion to Dismiss at this juncture of the proceedings.

Defendant's Motion to dismiss is denied at this time.