## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

David A. Reynolds

v.

Riverside Healthcare
Association, etc., et al.

November 7, 2002

Case No. (Law) 31215-EH

BY JUDGE EDWARD L. HUBBARD

This is a malpractice case wherein the Plaintiff alleges that the Defendant failed to disclose certain test results indicative of a pre-existing kidney disease which disease ultimately resulted in Plaintiff's total loss of kidney function. The test results in question resulted from an examination of Plaintiff by Defendant December 6, 1996. Suit was filed in this matter July 20, 2000, and was nonsuited July 18, 2001. Suit was refiled August 21, 2001.

The Defendant has filed a Plea that this matter is barred by the applicable statute of limitation in that suit was filed more than two years after the cause of action accrued. Plaintiff responds by stating the cause of action did not accrue until Plaintiff's renal disease was diagnosed in end stage in September 1999, as that was when his disease developed into a more serious condition which posed greater danger to him or which required more extensive treatment. In addition, Plaintiff states that § 8.01-243(C)(2) of the Code of Virginia is applicable in that Defendant concealed the test results from Plaintiff by not disclosing same, resulting in the applicable statute of limitation, being one year from the date the injury was discovered and that date could be no earlier than September 1999, when his kidneys failed.

Both parties have filed briefs on the issue and an ore tenus hearing was held August 20, 2002, wherein Dr. Feldman testified for the Defendant and Dr. Winn testified for the Plaintiff. Briefs by both parties were filed thereafter.

Code of Virginia, § 8.01-243, provides that every action for personal injuries shall be brought within two years after the cause of action *accrues*. Code of Virginia, § 8.01-230, provides "the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the *injury* is sustained in the case of injury to the person...." (emphasis added). The Supreme Court of Virginia, in *Locke v. Johns-Manville Corp.*, 221 Va. 951, 275 S.E.2d 900 (1981), defined *injury* as a "positive, physical or mental hurt to the claimant." The word *injury* as related to a medical malpractice claim based on a misdiagnosis or a failure to diagnosis a condition was later defined by the Supreme Court of Virginia in *St. George v. Pariser*, 253 Va. 329, 484 S.E.2d 888 (1997), as "the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment."

Defendant argues that, since it is undisputed that on the date the Defendant treated him, December 6, 1996, the Plaintiff suffered from the kidney disease that resulted in his total renal failure in September 1999 and the experts agree that the disease was degenerative and progressive, the injury to Plaintiff occurred immediately after December 6, 1996, as Plaintiff's condition degenerated progressively and consistently in linear fashion. Defendant bases this argument on the words of *St. George v. Pariser*, 253 Va. 329 (1997):

> injury is deemed to occur, and the statute of limitations period begins to run, whenever any injury, however slight, is caused by the negligent act, even though additional or more severe injury or damage may be subsequently sustained as a result of the negligent act....

However, the Court was quoting *Scarpa v. Melzig*, 237 Va. 509, 379 S.E.2d 307 (1989), which was quoting *Richmond Redevel. & Housing Auth. v. Laburnum Construction Corp.*, 195 Va. 827, 80 S.E.2d 574 (1954). Although, according to *Nunnally v. Artis*, 254 Va. 247, 492 S.E.2d 126 (1987), *Scarpa* was "wrongly decided" and "expressly overruled," the language from *Richmond Redevelopment* survives, although often criticized. As Plaintiff was already suffering from the degenerative condition when he presented to Defendant December 6, 1996, Defendant argues that as the disease progressed, each successive day presented an injury to the Plaintiff. It should be borne in mind that the *Nunnally* case, like the *Scarpa* case, was a

"wrongful conception" case, and that *Nunnally* was basically limited to that situation as evinced by the first paragraph of the *Nunnally* decision, "we consider whether to overrule our decision in *Scarpa v. Melzig*, 237 Va. 509, 379 S.E.2d 307 (1989), holding that in an action for *wrongful conception....*" (emphasis added).

The Plaintiff argues that the date of the injury to Plaintiff caused by the negligence of Defendant by failing to diagnose or disclose the problem to Plaintiff in 1996 was the date Plaintiff's condition worsened to the point of renal failure, September 1999, and Plaintiff had to rely on dialysis or a transplant to sustain his life. For this argument, Plaintiff relies on the language of *St. George v. Pariser, quoting De Boer v. Brown*, 138 Ariz. 168, 673 P.2d 912, 914 (1983):

> where a medical malpractice claim is based on a misdiagnosis or failure to diagnose a condition, the "injury" ... is the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment.

Plaintiff also argues that Defendant's failure to diagnose or disclose Plaintiff's condition in December 1996, amounted to a concealment, which makes Section (C)(2) of Virginia Code 8.01-243 applicable, which establishes the appropriate statute of limitations period as one year from the date of discovery in September 1999, which makes the suit filed July 2000 timely filed. Plaintiff claims Defendant's concealment need not rise to the level of an intentional act, but may be only negligent concealment, as appears here, to trigger the saving provision of § 8.01-243(C)(2), and Plaintiff, in this regard, relies on the language of *Hernandez v. Amisub*, 714 So. 2d 539 (Fla. App. 1998), a case involving a foreign object left inside a surgery patient.

The court is familiar with the *Hernandez* case and would note the particular fact situation of *Hernandez* relative to the language quoted by Plaintiff as supportive in his case. In the *Hernandez* case, a laparotomy pad was left inside the plaintiff following a surgical procedure. The hospital report and the nurse employee involved indicated a pad count was made and it indicated all pads were accounted for. The hospital argued in the *Hernandez* case that it must have actual knowledge that the foreign object was left in the patient before a concealment could be found. The court ruled that the word concealment did not include a scienter (knowledge) element and that the word "conceal" did not necessarily infer intent or deliberation and, moreover, even under an "intentional misrepresentation" claim, the misrepresentation need not be deliberate. Misrepresentation may also be shown by carelessness or

recklessness as to the truth of the matter asserted. The concealment in the *Hernandez* case was found to be the assertion by a hospital employee that all pads were accounted for; however, the employee admitted that she sometimes signed off without actually doing the count, and, in this case, she must not have done the actual count, and she signed another person's name to the count who had not actually participated. The court stated that there was *more than mere negligence* here.

It is clear to the court that the concealment in the *Hernandez* case was exactly as noted by the court, more than mere negligence. It was an assertion of a falsehood, and, in that situation, it is understandable that concealment was found. In the present case, nothing more than mere negligence has been pleaded. Plaintiff's argument for application of § 8.01-243(C)(2) is that Defendant's mere negligence in not reporting the test results amounts to concealment under the statute as the inaction of the Defendant should be judged by the result and not the state of mind of the Defendant. The court is not persuaded by Plaintiff's argument based on the *Hernandez* case, as the court does not feel that case addressed a situation as here, where no positive assertions were made and nothing more than simple negligence has been pleaded.

Having basically found the *Hernandez* case inapposite to the present issue, the court notes that Plaintiff also argues that § 8.01-243(C)(2) is applicable as the result of Defendant's negligent failure to disclose was concealment of the results from Plaintiff and the word concealment used in § 8.01-243(C)(2) has no modifier and, hence, would include negligent concealments. The court finds the maxim *noscitur a sociis* persuasive here. As stated in *Turner v. Commonwealth*, 226 Va. 456, 309 S.E.2d 337 (1983), quoting *Michie's Jurisprudence*, and *Andrews v. American Health & Life Ins. Co.*, 236 Va. 221, 372 S.E.2d 399 (1988), "the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be read in harmony with its context." The word in question, concealment, is found in subsection 2 of § 8.01-243(C) and appears as follows:

> 2. In cases in which fraud, concealment, or intentional misrepresentation prevented discovery of the injury within the two-year period, for one year from the date the injury is discovered....

There is no "negligent" fraud and there is no "negligent" intentional misrepresentation, and it seems entirely unlikely that the legislature would have placed a "negligent" concealment between these two obviously intentional acts. It appears to the court from the purport of the entire phrase of which the word concealment is a part and reading the phrase in harmony with

its context, the word concealment does not include mere negligence. Words in a statute should also be construed in the sense in which they are popularly used (17 M.J., *Statutes*, § 61), and the popular use of concealment when used along with fraud and intentional misrepresentation usually signifies an intent that something not be known. As a result, the court is not persuaded that Code of Virginia 8.01-243(C)(2) is applicable to this situation.

As it has been determined by the court that the two-year statute of limitations applies as set forth in § 8.01-243(A), the court believes the proper analysis is that set forth by Justice Lacy in *St. George v. Pariser*: "Before addressing when an injury arises for statute of limitations purposes, we must first identify the actionable injury." She goes on to identify an actionable injury in a misdiagnosis case, or failure to diagnose, as the development of the problem into a more serious condition which poses greater danger to the patient or which requires more extensive treatment. Once the actionable injury is identified, the determination will have to be made as to when it occurred and the party asserting the limitations bar bears the burden of proving this with a reasonable degree of medical certainty.

The *St. George* case involved the misdiagnosis of a cancerous condition which at the time of the misdiagnosis was confined to the epidermis. In this condition, removal of those cancerous cells at that point would eliminate recurrence; however, if the cancerous cells were to enter the dermis, even complete removal of the cancerous cells at that point would not insure that the condition would not recur. Unfortunately for Ms. St. George, the cancerous cells did invade the dermis. The Supreme Court found that the actionable injury in this case occurred when the cancerous cells invaded the dermis because it was then that the problem which Ms. St. George had developed into a more serious condition which posed greater danger or required more extensive treatment. The *St. George* case involved a pre-existing condition as does the case here; however, the condition in the *St. George* case could have remained benign without further harm and without further treatment, while the case here presents a pre-existing condition which by all accounts would, from onset, progress inexorably to renal failure without intervening treatment. Also, by all accounts, more likely than not, intervening treatment could have reversed this process at some point. The pre-existing condition of Ms. St. George was not such type as naturally progressed in linear fashion to a predictable result. The pre-existing condition of the Plaintiff here would naturally progress in linear fashion to the predictable result which actually occurred, renal failure. There was in the *St. George* case a discernable change in her condition as it went from "biologically benign" in the epidermis to potentially fatal in the dermis. The condition of the Plaintiff here was always

going to result in renal failure without treatment, so the result of renal failure without treatment was not a change in condition. What made this condition a more serious condition which posed greater danger to the Plaintiff was that point in the natural progression of the disease when it became irreversible by treatment. That is the point of actionable injury. When that occurred is a question of fact. The evidence produced on this point is in conflict. Dr. Feldman was unequivocal in his assessment that the Plaintiff's condition was irreversible as of December 6, 1996; however, Dr. Winn (although one answer by her appears contradictory, several more answers are definitive) assesses his condition on that date as being in a group or category where "somewhere between 60 to 85 percent can possibly be reversed or is reversible." Since the evidence is in conflict on the point at which the actionable injury occurred, at this point prior to trial of the general issue, with this being a question of fact to be determined by the jury upon proper instruction, the court denies Defendant's Special Plea in Bar asserting the statute of limitations.