# IN THE SUPREME COURT OF IOWA

No. 109 / 04-1727

Filed February 22, 2008

**TAMRA K. MURTHA**, an individual, and **TAMRA K. MURTHA**, as Natural Mother and Next Friend of ERIN MURTHA, a minor,

Appellant,

vs.

**STEVEN CAHALAN,** an individual d/b/a SURGICAL AFFILIATES, P.C.; **PAUL KELLER,** an individual d/b/a RADIOLOGY, P.C.; **BREAST CENTER WEST; ROBERT KOLLMORGEN,** an individual d/b/a THE IOWA CLINIC WEST LAKES, L.L.C.; and **GERALD BAKER,** an individual d/b/a THE IOWA CLINIC WEST LAKES, L.L.C.,

Appellees.

---

Appeal from the Iowa District Court for Polk County, Karen A. Romano, Judge.

Plaintiff in medical negligence case appeals from district court's summary judgment for defendants. **REVERSED AND REMANDED.**

Marc A. Humphrey of Humphrey Law Firm, P.C., Des Moines, for appellant.

Thomas J. Joensen and Jack Hilmes of Finley, Alt, Smith, Scharnberg, Craig, Hilmes & Gaffney, P.C., Des Moines, for appellees Steven Cahalan, Paul Keller, and Breast Center West.

Stacie M. Codr and Michael H. Figenshaw of Bradshaw, Fowler, Proctor & Fairgrave, P.C., Des Moines, for appellees Robert Kollmorgen and Gerald Baker.

**LARSON, Justice.**

On September 5, 2003, Tamra Murtha sued the defendant medical providers for failure to properly diagnose and treat her breast cancer. The defendants moved for summary judgment, which the court granted on the basis the suit was barred by our medical-negligence statute of limitations, Iowa Code § 614.1(9) (2001). We reverse and remand.[1]

### I. Facts and Prior Proceedings.

Tamra Murtha discovered a lump in her left breast through self-examination in the summer of 1997. On June 20, 1997, a mammogram revealed no evidence of breast malignancy. Murtha was referred to Dr. Cahalan for further examination. On January 23, 1998, Dr. Cahalan physically examined Murtha, performed a fine-needle aspiration biopsy of the lump, and diagnosed the lump as a noncancerous, fibrocystic mass that was most likely fibroadenoma, which is

> [a] benign neoplasm derived from glandular epithelium, in which there is a conspicuous stroma of proliferating fibroblasts and connective tissue elements; commonly occurs in breast tissue.

*Stedman's Medical Dictionary* (27th ed. 2007) (online [www.Stedmans.com](www.Stedmans.com)). The pathology report provided to Dr. Cahalan stated:

> DIAGNOSIS:
>
> BREAST, LEFT [thin needle aspiration biopsy]: Not within normal limits; but, no evidence of malignancy . . . .

Dr. Cahalan provided these results to Murtha and her primary-care physician. Dr. Cahalan recommended that Murtha return in six months for a follow-up mammogram. On October 30, 1998, Murtha had a yearly mammogram revealing no definite abnormality. However, the radiologist

---

[1]The plaintiff also raises issues of equitable estoppel and the constitutionality of section 614.1(9). Because we resolve the appeal on the application of section 614.1(9), we do not address these additional issues.

recommended that an ultrasound or biopsy be performed to ensure the lump was not malignant. Murtha had a follow-up visit with Dr. Cahalan the next week to discuss the radiologist's recommendations. Dr. Cahalan suggested the option of surgically removing the lump to alleviate any concerns Murtha may have about it in the future. Murtha declined to have the lump removed at that time and, for personal reasons, had no further involvement with Dr. Cahalan.

On October 15, 1999, Murtha had another yearly mammogram. Dr. Keller reviewed the mammogram, concluding that the findings were unremarkable. He recommended that Murtha complete a routine screening in one year. Within that year, on December 3, 1999, after being advised by her sister to request an ultrasound, Murtha met with Dr. Kollmorgen. An ultrasound was performed that day. Dr. Keller reviewed the results of the ultrasound, concluding the lump was a simple cyst. Dr. Kollmorgen agreed and recommended Murtha cut down on caffeine and take vitamin E.

On November 10, 2000, Murtha had a yearly mammogram revealing no evidence of malignancy. On November 15, 2000, she returned to Dr. Kollmorgen, who noted a breast irregularity and an abnormal mammogram, observing that the lump may have been slightly more prominent than the previous year. Dr. Kollmorgen recommended that Murtha continue yearly mammograms.

On December 4, 2001, Murtha had another mammogram. Dr. Kollmorgen had retired since Murtha's last visit, so she was seen by Dr. Baker on December 7, 2001. Dr. Baker palpated the lump, was concerned, and performed a needle biopsy, noting that the area felt gritty, which could be a sign of cancer. This was communicated to Murtha during the exam. However, Dr. Baker doubted the accuracy of the biopsy results because the needle had passed through an artery during the procedure,

contaminating the sample with blood. Dr. Baker recommended that the lump be removed, even though the results of the needle biopsy were inconclusive, because he was concerned that the lump was irregular. An excisional biopsy was scheduled for the following Friday. Murtha was notified that the needle biopsy was nondiagnostic or benign, and she rescheduled the excisional biopsy for January 4, 2002. On January 3, 2002, Murtha canceled the excisional biopsy to get a second opinion.

In April 2002 Murtha saw Dr. Beck, who agreed with Dr. Baker that the lump should be removed, though she did not seem overly concerned. On June 14, 2002, Dr. Beck performed an excisional left-breast biopsy. Further diagnostic testing revealed adenocarcinoma—breast cancer.

Murtha filed this action for damages against Drs. Cahalan, Keller, Kollmorgen, and Baker on September 5, 2003. Her suit alleged negligent treatment and care for misdiagnosis of the lump in her breast beginning in 1997.

## II. Standard of Review.

Our review of a district court's ruling on a motion for summary judgment is for correction of errors at law. *Schlote v. Dawson*, 676 N.W.2d 187, 188 (Iowa 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). A question of fact exists "if reasonable minds can differ on how the issue should be resolved." *Walker v. Gribble*, 689 N.W.2d 104, 108 (Iowa 2004). In reviewing the district court's ruling, the evidence presented must be viewed in the light most favorable to the party opposing the motion for summary judgment. *Kelly v. Iowa Mut. Ins. Co.*, 620 N.W.2d 637, 641 (Iowa 2000); *Gen. Car & Truck Leasing Sys., Inc. v.*

*Lane & Waterman*, 557 N.W.2d 274, 276 (Iowa 1996). On appeal we "indulge in every legitimate inference that the evidence will bear in an effort to ascertain the existence of a fact question." *Crippen v. City of Cedar Rapids*, 618 N.W.2d 562, 565 (Iowa 2000).

### III. Iowa's Medical Malpractice Statute.

Iowa Code section 614.1(9) is the statute of limitations governing medical malpractice cases. Under section 614.1(9), medical malpractice claims arising out of patient care must be brought "within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known . . . of the existence of, the injury . . . for which damages are sought." Iowa Code § 614.1(9). As discussed at length in *Rathje v. Mercy Hospital*, 745 N.W.2d 443 (Iowa 2008) (filed today), the legislature's enactment of section 614.1(9) implemented a statute of repose for medical malpractice cases and addressed our holding in *Baines v. Blenderman*, 223 N.W.2d 199 (Iowa 1974), that the statute of limitations for medical malpractice cases began to run when a cause of action is discovered. Our holding in *Rathje* clarifies our application of section 614.1(9). The statute of limitations for medical malpractice cases is triggered upon "actual or imputed knowledge of both the injury and its cause in fact." *Rathje*, 745 N.W.2d at 461. Knowledge of the wrongfulness of the defendant's conduct, however, is not required to commence the statute of limitations. *Id.*

In granting summary judgment in this case, the district court concluded that,

> [o]nce Murtha was aware that a problem existed, a lump in her left breast, she had a duty to investigate even though she may not have had knowledge of the nature of the problem. . . . In this case, Murtha's lawsuit was filed on September 5, 2003. There is no dispute of material fact when viewed in the light most favorable to Murtha, that she had inquiry notice of her

symptoms of her "injury" long before September 5, 2001 [the beginning of the two-year period preceding the filing of this suit]. Murtha's own deposition testimony reveals that the lump never went away and that she was always concerned about what it was from the time of its discovery. Thus, the knowledge of the physical harm occurred in 1997 and she was urged to have the lump removed as early as 1998. Murtha's knowledge of the injury was over five years prior to the filing of this lawsuit, therefore her claims are barred by the applicable statute of limitations.

Section 614.1(9) does not support the ruling of the district court that the statute of limitations began to run in 1997 when Murtha first noticed the lump in her breast. Under that section, suit must be brought "within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known, . . . of the existence of, the *injury* . . . for which damages are sought." Iowa Code § 614.1(9) (emphasis added).

The defendants contend that Murtha's "injury" was the lump she discovered in 1997. Further, they argue Murtha knew of the injury when she discovered the lump, was concerned about it, and knew it could be a sign of breast cancer. Murtha counters that she did not suffer an "injury" until she was diagnosed with cancer. It was only after her diagnosis, she argues, that she knew of her injury, thus triggering the beginning of the limitations period. As discussed below, we do not agree with either party's argument as to when Murtha suffered an "injury" for section 614.1(9) purposes and when she knew, or should have known, of such injury. "Injury" under the statute may occur at some point between the discovery of the lump (under the defendants' argument) and the final diagnosis of cancer (under the plaintiff's argument).

Section 614.1(9) does not define the term "injury." In fact, in medical malpractice cases, the term has been subject to considerable debate. It has been said that

"[i]njury" could mean the allegedly negligent act or omission; the physical damage resulting from the act or omission; or the "legal injury," *i.e.*, all essential elements of the malpractice cause of action.

*Massey v. Litton*, 669 P.2d 248, 250 (Nev. 1983). In *Schlote* we defined "injury," for purposes of section 614.1(9), as the physical harm incurred by the plaintiff, not the legal harm or wrongful act by the defendant. Today, we supplement that definition by including an additional requirement that the statute of limitations is only triggered upon knowledge, or imputed knowledge, of the cause in fact of the physical or mental injury. *Rathje*, 745 N.W.2d at 458. Thus, determining when the statute of limitations is triggered in a medical malpractice case requires two distinct steps. First, the plaintiff must have knowledge, or imputed knowledge, of an injury, i.e., physical or mental harm. Second, the plaintiff must have knowledge, or imputed knowledge, of the cause in fact of such injury. It is the first step— whether the plaintiff knew, or should have known, she suffered an injury— that is at issue in the present case.

For most medical malpractice cases, such as *Schlote*, defining injury as "physical or mental harm" is appropriate. However, claims of negligent misdiagnosis, as in the present case, are often based on a different type of harm and require us to further develop our definition of "injury" for such cases. *See St. George v. Pariser*, 484 S.E.2d 888, 891 (Va. 1997) (recognizing that a different approach is necessary to determine the existence of an "injury" in misdiagnosis cases as opposed to malpractice actions based on the affirmative conduct of the defendant).

In many medical malpractice cases, the injury for which damages are sought is immediately apparent. *See, e.g., Christy v. Miulli*, 692 N.W.2d 694, 699-700 (Iowa 2005) (plaintiff was immediately aware of the injury—death—upon the death of the deceased); *Langner*, 533 N.W.2d at

518 (patient was immediately aware of her injury—emotional and mental stress—upon hearing the defendant's harmful statements). In those cases, it is relatively simple to determine what the injury is, when it occurred, its cause in fact, and when the plaintiff knew, or should have known, of it—all of which occurred at the same time. Application of section 614.1(9) to such cases is straightforward.

However, there are those medical malpractice cases that are based on an injury that is not immediately apparent, such as an internal condition with no specific external symptoms or a progressive condition. In such cases, it is not at all clear at what stage the ultimate injury for which the plaintiff seeks damages actually occurred, nor is the cause of such injury always clear. *Rathje*, 745 N.W.2d at 449. Expert testimony and other medical evidence are usually required to make these determinations. *See, e.g.*, *Renner v. Stafford*, 429 S.E.2d 218, 220–21 (Va. 1993) ("[T]he crucial question in cases like this, when the date of the wrongful act possibly does not coincide with the date of the resulting harm to the plaintiff, is: When was the plaintiff hurt? The answer to this question must be found mainly in the medical evidence."). Further, determining when the plaintiff knew, or should have known, of the existence of the not-immediately-apparent injury, for statute-of-limitations purposes, is far from straightforward. Such cases often involve a claim of negligent misdiagnosis, as is the case here. Because, prior to today, we have not addressed how section 614.1(9) applies to a claim of negligent misdiagnosis in which the injury for which damages are sought is not immediately apparent, we look to other jurisdictions for guidance. Though the statutes of limitations in these jurisdictions are not necessarily identical to our section 614.1(9), they all require the fact finder to determine the stage at which the "injury" occurred and, as such, are

instructive in identifying the injury and when it occurred in the context of a negligent misdiagnosis case.

In *DeBoer v. Brown*, 673 P.2d 912 (Ariz. 1983), the Arizona Supreme Court addressed facts very similar to those in this case. The Arizona statute[2] began to run on the "date of injury." *DeBoer*, 673 P.2d at 913. "Injury" has been defined by the Arizona court as "the damaging effect sustained by the plaintiff-patient." *Id.* at 914. The patient in *DeBoer* was being treated for various skin problems, and in August 1976, the patient's doctor diagnosed a lesion on the patient's back as a common wart. From that date until April of 1980, the patient noticed no change in the lesion. However, as evidence later showed, the lesion began to grow internally sometime in 1979, and in April 1980, the lesion was diagnosed as a malignant melanoma. The patient's chances of survival dropped from ninety-five percent in 1976 to only fifty to seventy-five percent in 1980. The patient filed suit in 1981 against the doctor who had missed the cancer (which was determined later to have existed at the time of his 1976 exam). The doctor raised a statute-of-limitations defense, claiming the suit was barred. *Id.*

The Arizona court rejected the doctor's statute-of-limitations defense, stating:

> Where a medical malpractice claim is based on a misdiagnosis or a failure to diagnose a condition, the "injury" is not the mere undetected existence of the medical problem at the time the physician misdiagnosed or failed to diagnose it. Nor is the "injury" the mere continuance of the same problem in substantially the same state or the leaving of the patient "at risk" of developing a more serious condition. Rather, *the "injury" is the development of the problem into a more serious*

---

[2]Arizona Revised Statute section 12–564(A), in effect at the time of *DeBoer*, was later found unconstitutional in *Kenyon v. Hammer*, 688 P.2d 961 (Ariz. 1984). However, the ruling in *DeBoer* was not overruled. The current statute of limitations for medical negligence claims is Arizona Revised Statute section 12–542(1).

> *condition which poses greater danger to the patient or which requires more extensive treatment.*

*Id.* (emphasis added) (citing *Augustine v. United States*, 704 F.2d 1074, 1078 (9th Cir. 1983)).  Based on its analysis of cases from other jurisdictions, the Arizona court concluded the patient "was damaged and his 'injury' occurred when the misdiagnosed lesion began to grow and threaten his life expectancy, not when the misdiagnosis occurred."  *Id.* at 915.

These principles are well supported by cases from other jurisdictions.  For example, in a case similar to Murtha's, a Maryland court said, as to the defendant's negligent failure to diagnose cancer:

> In our view, a negligent misdiagnosis is not necessarily an "injury" for purposes of limitations; a wrongful "act" or "omission" is not the same as an "injury."  Indeed, the two need not necessarily occur simultaneously.

*Edmonds v. Cytology Servs. of Md., Inc.*, 681 A.2d 546, 558 (Md. Ct. Spec. App. 1996)*, aff'd sub nom Rivera v. Edmonds*, 699 A.2d 1194 (Md. App. 1997).  The rule of law in other jurisdictions is that, under statutes requiring identification of the "injury" rather than the negligent act or omission, an injury in a negligent misdiagnosis case requires more than a continuing undiagnosed condition.  *See, e.g.*, *Augustine*, 704 F.2d at 1078 (injury was not the existing lump, but the development of it into cancer); *Doe v. Cutter Biological*, 844 F. Supp. 602, 608 (D. Idaho 1994) (applying Idaho law and holding that Doe's injury was not "objectively ascertainable" until he tested positive for HIV); *Larcher v. Wanless*, 557 P.2d 507, 512 n.1 (Cal. 1976) (injury is "damaging effect"); *Steingart v. Oliver*, 243 Cal. Rptr. 678, 682 (Cal. Ct. App. 1988) (undiagnosed breast cancer not injury until the plaintiff "suffered . . . damaging effect or appreciable harm"); *Rivera*, 699 A.2d at 1202 (suggesting that condition became injury when "additional adverse consequences" occurred); *St. George*, 484 S.E.2d at 891 ("This is a misdiagnosis case, not a malpractice action based on negligently performed

surgery. In every misdiagnosis case, the patient has some type of medical problem at the time the physician is consulted. But the injury upon which the cause of action is based is not the original detrimental condition; it is the injury which later occurs because of the misdiagnosis and failure to treat." (Citation omitted.)); *Lo v. Burke*, 455 S.E.2d 9, 12 (Va. 1995) (plaintiff's condition, initially diagnosed as a cyst, became cancerous; the court held the plaintiff "suffered a physical hurt [or injury] only when the cancer developed," relying on *Locke v. Johns-Manville Corp.*, 275 S.E.2d 900, 904 (Va. 1981), which held an injury is a "positive, physical or mental hurt to the claimant, not legal wrong to him in the broad sense that his legally protected interests have been invaded"); *Paul v. Skemp*, 625 N.W.2d 860, 873 (Wis. 2000) (recurring headaches, misdiagnosed by the defendant, became injury when patient's arteriovenous malfunction either ruptured or could no longer be treated). Our definition of "injury" as physical or mental harm is consistent with the holdings in these cases when the claim is one of negligent misdiagnosis.

**IV. Disposition.**

The key to applying section 614.1(9) in this case is determining when the plaintiff knew or should have known of her injury, i.e., the physical harm suffered. However, in order to make this determination, the initial question must be at what stage her condition became an "injury" within the meaning of the statute. In a case involving a condition that is not immediately diagnosed, such as Murtha's, the "injury" does not occur merely upon the existence of a continuing undiagnosed condition. Rather, the "injury" for section 614.1(9) purposes occurs when "the problem [grows] into a more serious condition which poses greater danger to the patient or which requires more extensive treatment." *DeBoer*, 673 P.2d at 914. Once a fact finder identifies the injury by answering that question, the statute

requires it to determine when the plaintiff knew or should have known of the injury and the cause in fact of the injury. These inquiries—what constitutes the injury and its cause and when the plaintiff is charged with knowledge of such injury and its cause—are highly fact-specific. Under the summary-judgment record before us, these issues cannot be resolved as matters of law, as the district court did, but must be resolved as factual issues.

A reasonable fact finder could conclude that none of the events before September 5, 2001 (the beginning of the two-year period preceding the filing of Murtha's lawsuit) were "injuries" within the meaning of section 614.1(9). Prior to that date, Murtha was aware of a lump in her breast, but physical examinations, mammograms, and ultrasound examinations indicated her condition was benign. On December 7, 2001, Dr. Baker was concerned about the grittiness of the lump during a needle biopsy, but the biopsy was nondiagnostic. The doctors remained uncertain about whether the lump was cancerous until June 14, 2002, when the lump was excised and diagnosed as cancerous. Thus, in the absence of definitive medical evidence regarding the development of Murtha's cancer, a jury question exists as to when Murtha suffered an "injury." Even if a fact finder concludes that Murtha's lump developed into cancer or her cancer progressed, i.e., she sustained an "injury" for section 614.1(9) purposes, prior to the two-year period preceding the filing of her lawsuit, it is still a fact question under this record as to when she knew, or should have known, of that injury and its cause in fact. A reasonable fact finder could conclude that Murtha should have known of her injury and its cause only after December 7, 2001, when Dr. Baker expressed his concern that she may have a serious condition and recommended excision. This date was well within the two-year period preceding the lawsuit.

Because we hold that the issue was not properly resolved by summary judgment, we reverse and remand for further proceedings.

**REVERSED AND REMANDED.**

All justices concur except Wiggins, J., who concurs specially.

**WIGGINS, Justice (concurring specially).**

As stated in my special concurrence in *Rathje v. Mercy Hospital*, 745 N.W.2d 443 (Iowa 2008) (filed today), I concur in the legal interpretation by the majority opinion of Iowa Code section 614.1(9)(*a*) (2001). However, I would find not only do the defendants fail to establish there is no genuine issue of material fact regarding the application of section 614.1(9)(*a*), but also under the present summary judgment record the defendants do not establish sufficient facts to have the statute-of-limitations issue submitted to a jury.

Because a cross-motion for summary judgment on the statute-of-limitations issue was not filed by the plaintiff, the majority has declined to extend its discussion to consider the adequacy of the record to withstand such a motion. In order to more clearly describe the scope of our ruling and to provide guidance to the district court, I would make it clear that under the current record no reasonable jury could conclude the plaintiff should have known of her injury or that it was caused by medical care prior to the time the treating physician made the diagnosis that she had a malignancy. *See Hardi v. Mezzanotte*, 818 A.2d 974, 980 (D.C. 2003) (holding when the physician is at the stage where he is providing a diagnosis and advice for the patient's medical care, the patient cannot be expected to question him or to know the doctor's actions might be negligent and result in harm to the patient).

Nothing in the majority opinion is inconsistent with these observations.