E. B. PIEKENBROCK & SONS, Appellants, v. J. J. KNOER, AND J. J. KNOER as administrator of the estate of MARY A. KNOER, deceased ET AL, Appellees.

**Fraudulent conveyances:** LIMITATION OF ACTION. A creditor's right
1  of action to set aside a deed to property, which the husband has caused to be conveyed to his wife, is barred in five years after the alleged fraud is discovered; and discovery occurs upon a record of the deed in connection with a knowledge of facts suggesting fraud, or which if investigated with reasonable diligence would develop fraud.

**Same:** HOMESTEAD ELECTION: LIABILITY FOR DEBTS. The election of
2  a debtor to take a homestead right in property of his deceased wife, rather than a distributive share, is not a fraud upon his creditors; and such right is a mere personal right of possession and occupancy which cannot be subjected to his prior debts.

*Appeal from Palo Alto District Court.*—HON. W. B. QUAR-
TON, Judge.

THURSDAY, DECEMBER 12, 1907.

ACTION in equity in the nature of a creditor's bill.
demurrer to petition sustained, and plaintiffs appeal.—
*Affirmed.*

*Soper, Morse & Soper* and *Hurd, Lenehan & Keisel,*
for appellants.

*E. A. Morling,* for appellees.

WEAVER, C. J.— In the year 1894, the defendant J.
J. Knoer, being engaged in business as a retail merchant at
Whittemore, Kossuth county, Iowa, became indebted to the
plaintiffs for a bill of goods.   Payment not being made,
plaintiffs brought suit upon their demand in the district
court of Kossuth county, and on May 22, 1894, obtained
judgment thereon, which is still unpaid.   The present ac-
tion was instituted October 23, 1902, but the substituted
petition, the sufficiency of which we are now to consider,
was filed November 14, 1903.   This action is brought in
equity to subject to the payment of said judgment certain
real estate of which it is alleged said J. J. Knoer is the
owner, or in which he has some title or interest subject to
execution.

The first count of the petition alleges, in substance,
that after the rendition of such judgment, and on or about
February 1, 1897, said J. J. Knoer purchased one hun-
dred and twenty acres of land in Palo Alto county, and,
for the purpose of defrauding his creditors, caused the title
to be conveyed to his wife, Mary A. Knoer, who took and
held the same in secret trust for his use and benefit.   The
deed was duly recorded in the office of the recorder of Palo
Alto county on February 8, 1897.   It is alleged, however,

that the plaintiffs lived at Dubuque, Iowa, and that their attorneys who procured the judgment resided at Algona, in Kossuth county, and that the defendant, J. J. Knoer, concealed from them his ownership of said property, and that knowledge thereof did not come to said plaintiffs or their attorneys until about October 1, 1902, and that upon such discovery this action was promptly instituted. It is also shown that from the time of the entry of said judgment the defendant has had no other property from which the same could have been collected. In the second count of their petition, the plaintiffs, in addition to the matters already stated, allege that on October 9, 1900, Mary A. Knoer, the wife of J. J. Knoer, died intestate, leaving, surviving her, her said husband and six minor children, her only heirs at law, who are named as parties defendant to this proceeding. It is also alleged that said Mary A. Knoer died seised of the one hundred and twenty acres of land already mentioned and personal property to the amount of about $2,000; and that soon after the death of his wife said J. J. Knoer, in furtherance of his purpose to defraud his creditors, and to prevent the collection of plaintiffs' judgment, transferred and assigned all of his right, title, and interest in the personal estate of the deceased to his brother-in-law, one Joseph Mulroney. About the same time, he was appointed administrator of his wife's estate, which has since been fully settled. From the death of his said wife until the beginning of the present suit, the defendant remained in possession of said land, but made no election whether he would take a distributive share thereof, as the surviving husband, or, in lieu of such share, retain a homestead right in said premises. Shortly after the commencement of this action, said defendant made a written election to take a homestead right only in said land, and released all other interest in said property to his children, and filed said writing in the district court having jurisdiction of the settlement of said estate. Later the said J. J. Knoer

filed his petition in bankruptcy, alleging his insolvency, and in that proceeding claimed as exempt his said homestead right, together with other exemptions provided by the laws of Iowa.   Upon the showing thus made, the plaintiffs asked a decree declaring their said judgment a lien upon the land superior to the title and claim of the defendants, and that the same be sold for the satisfaction thereof.   In the event that the relief thus prayed should be denied, plaintiffs further prayed that defendant's election to retain said homestead right in the real estate in lieu of a distributive share therein be adjudged fraudulent as against his creditors, and that his distributive share in the property be set apart and subjected to the payment of plaintiffs' judgment.   The defendants filed a demurrer to the first count of the petition because it appears upon the face of said pleading that the alleged cause of action is barred by the statute of limitations, and because Mulroney, the party to whom it is alleged defendant's interest in his wife's personal estate was fraudulently disposed, was not made a party defendant.   They also demurred to the second count because of the failure to make Mulroney a party defendant, and because the facts stated in said pleading do not entitle the plaintiffs to the relief demanded.   The demurrer being sustained as to each count of the petition, plaintiffs elected to stand upon their said pleading, and thereupon the trial court dismissed the suit and entered judgment against the plaintiffs for costs.

I.   Plaintiffs concede that, where a husband conveys land to his wife, an action to subject such land to the payment of debts, incurred by the husband prior to such conveyance, is barred after the expiration of five years from the record of the deed.   *Gebhard v. Sattler*, 40 Iowa, 152; *Hawley v. Page*, 77 Iowa, 239; *Laird v. Kilbourne*, 70 Iowa, 83; *Francis v. Wallace*, 77 Iowa, 373; *Mickel v. Walraven*, 92 Iowa, 423; *Sims v. Gray*, 93 Iowa, 38; *Nash v. Stevens*, 96 Iowa, 616.   It is insisted, however, that, as the legal title in the

1. FRAUDULENT CONVEYANCES: limitation of actions.

present case was never in the judgment defendant, the rule does not apply, and that the statute of limitations did not begin to run until the actual discovery by plaintiffs of the alleged fraud. Our statute (Code, section 3448) provides that actions for relief on account of fraud are barred within five years, but that in actions heretofore solely cognizable in courts of equity the cause of action shall not be held to have accrued until the alleged fraud has been discovered. The above-cited cases constitute no exception to this rule of the statute, but are made to turn upon the proposition that the fraud must be held to have been discovered when the deed, the validity of which is attacked, was placed on record, giving notice of the transaction to the world. " Knowledge of fraud," as we have construed that expression in this connection, does not contemplate actual knowledge thereof before the statute begins to run, but such knowledge or notice as would lead a man of reasonable prudence to make inquiries which would disclose the fraud. The record of a deed imparts constructive notice of its contents, and if the facts which the record shows, with other facts known to the creditor, are of a character to suggest fraud, he is charged with the knowledge which inquiry made with reasonable diligence would disclose. This rule has its application not only as against creditors seeking relief, but as to other persons interested in or making claims to property which has been fraudulently conveyed by the recorded deed. *Nash v. Stevens,* 96 Iowa, 616; *Clark v. Van Loon,* 108 Iowa, 253.

In the case of *Mickel v. Walraven, supra,* we had occasion to say: " It has frequently been held by this court that the record of a deed is notice to the world of its contents, and that, where a deed which is fraudulent as against creditors is spread upon the public records, notice to the world is given of its character." This language was used as applicable to an equitable action to subject land, which had been conveyed to the wife by a third party, to the pay-

ment of a judgment against her husband.   We further said, in the same case, that the plaintiff must be held to have discovered the fraud in the conveyances at the time they were recorded.   The allegations in the petition in the present case do not present any peculiar features or circumstances calling for the application of any different rule.   The land which is alleged to have been purchased by the judgment debtor and conveyed by the seller to the debtor's wife lies within a half dozen miles of the place where the debtor resided at the time the debt was contracted and the judgment entered against him.   The attorneys who procured the judgment reside in the immediate vicinity.   The plaintiffs themselves reside within the State.   If, as is now alleged, Mary A. Knoer had no property in her own right and no means with which to make the purchase of such land, that is a fact which must have been of some notoriety in the neighborhood, or, if not so, was a matter the truth of which could doubtless have been readily developed upon reasonable inquiry.   The fact that the wife of the judgment debtor took title to valuable land within a short period after the rendition of the judgment against her husband, and that thereupon both husband and wife went into possession of the property, and continued therein for five years or more, is in itself such a combination of circumstances as would excite the inquiry, if not the suspicion, of a reasonably prudent creditor; and when we add to this situation the further fact that during all of this time the deed purporting to convey title to the wife was a matter of public record, thereby putting creditors upon inquiry concerning its character, the reasons for holding that the statute of limitations begins to run with the recording of the deed are no less apparent or persuasive than they would be if the deed had been made directly from the husband to the wife.   In principle the case thus made does not differ materially from the one in *Shircliff v. Casebeer,* 122 Iowa, 618.   There judgment was entered against the husband in 1892.   Immediately thereafter a new

stock of goods was obtained, and a new business begun in the name of the wife, but conducted by the husband, and from this beginning property to a considerable amount was accumulated. After a period of more than five years, the judgment creditors began an action to subject the property to the payment of the husband's debt, but we held it to be barred by the statute of limitations. We deem it unnecessary to go into any review or discussion of the authorities cited to us by appellants from the text-books and from decisions of other courts. The rule to which we adhere has been too long followed in this jurisdiction, and we are too well satisfied of its justice, to now abandon it. We do not desire to be understood as holding that under no circumstances the running of the statute of limitations may be postponed by the fraud or deceit of the judgment debtor; but we do hold that no showing is made in this case to avoid the application of the general rule by which such actions are barred upon the expiration of five years from the date of the recording of the alleged fraudulent conveyance. There was therefore no error in sustaining the defendants' demurrer to the first count of the plaintiffs' petition.

II.    The question as presented by the second branch of the controversy is whether the election of the defendant J. J. Knoer to take a homestead right, instead of a distributive share, in the land left by his wife, can be set

2. SAME: homestead election: liability for debts.

aside or ignored as being in fraud of his creditors. It seems to be the theory of counsel for appellant that upon the death of his wife said defendant became vested with a fee title to a one-third share in the land of which she died seised, and that his subsequent election to take a homestead right in lieu of such share operated in the nature of a voluntary conveyance from him to his children, and may therefore be set aside by a court of equity for the benefit of his creditors. But it is not correct to say that, immediately upon the death of the wife, the surviving husband becomes vested by operation of law with an

absolute title to a one-third interest in the land of which she dies seised.  He does become vested with a right to choose whether he will take such share, or in lieu thereof will claim and hold a homestead right in the property, and when such choice is made it doubtless relates back to the date of the death of his wife.  The children of the deceased wife took all their interest in the estate, whether it be the entire estate or a two-thirds thereof, directly from her, and derived nothing from or through their father, the defendant herein.  It is true that by his act or renunciation they obtained a greater interest than they would had he chosen the other alternative, but the estate which they thus received is derived entirely from their deceased mother, and it goes to them charged with no lien or burden for the payment of the father's debts.  It was held by this court, in *Shields v. Keys,* 24 Iowa, 298, that a husband entitled by law to a share in lands devised by his wife to a third person could waive his right to a distributive share in such land, and that his creditors had no recourse upon the property to which he might have been entitled had he made claim thereto. The surviving husband, as we have already said, does become vested with a right in the land of which his wife dies seised; but it is a right to exercise an option or choice between two very different estates or interests, or rights in such property.  The choice is personal to him.  It cannot be exercised for him by a creditor.  Having been given such choice by an express provision of the statute, the court has no authority to say that in accepting one alternative, rather than the other, he perpetrates a fraud upon his creditors. The husband having chosen to take the homestead right, the minor defendants herein took the entire title to the property subject only to such homestead right, and the property in their hands is in no manner liable to be charged with the payment of his debts.  We are cited to no authority which is inconsistent with this conclusion, and no good reason is suggested why we should now establish such a precedent.

Finally, it is said, in support of this appeal, that, in any event, the defendant J. J. Knoer, by the death of his wife and by his election to take a homestead right in the land, became possessed of a life estate or a life interest or right therein, which, having been acquired after the debt now sought to be enforced was contracted, cannot be held as exempt from execution, and that the trial court should therefore have overruled the demurrer to the second count of the petition. At the first blush this suggestion would appear to be plausible; but, when we come to consider the nature of the homestead right retained by the defendant and the statutory provisions under which it is obtained and enjoyed, the claim thus made will be found untenable. The right which the surviving husband has in a .homestead, the title to which was in his deceased wife, is a mere right to continue to possess and enjoy the same, and this possession and occupancy he may retain and enjoy for the remainder of his life if he chooses so to do, or may abandon it and leave the right of possession to the heirs. Code, section 2985; *Stevens v. Stevens,* 50 Iowa, 491. Such right of occupancy and possession is not an estate in the property, and it confers no title which can be conveyed to another or can become subject to the lien of a judgment. *Meyer v. Meyer,* 23 Iowa, 359; *Butterfield v. Wicks,* 44 Iowa, 310; *Smith v. Eaton,* 50 Iowa, 488. In the *Butterfield case, supra,* this court said: "The right of occupancy and possession confers no title to the property. It is a mere personal right. When the occupancy is abandoned, the right ceases. It would seem to follow that this right of possession confers no right which can be the subject of a mortgage.. No valuable interest could pass to the mortgagee, for upon the foreclosure of the mortgage, and the eviction of the mortgagor, his homestead right would cease, and the property would pass unincumbered to the heir or devisee." Construing this same statute, it has been held that a husband who has elected to retain a life estate in a homestead may con-

vey or release the same to the heirs free from the claims of his crditors.   *Green v. Root* (D. C.), 62 Fed. 191.

That a mere personal right to occupy and possess a homestead, a right which cannot be conveyed to another or be made the subject of a lien by contract or by judgment, a right which is waived or lost whenever the holder abandons or ceases to exercise it, cannot be made the subject of a levy or a sale by a creditor, would seem to be too clear to justify discussion.   To reach this conclusion, it is unnecessary to consider the effect, if any, which the statutory exemption of homesteads may have upon the rights of the parties to this controversy.   It may be said, however, that the surviving husband, in the present instance, is not claiming the homestead by virtue of any exemption to himself, but by virtue of the exemption with which the statute clothed the property in the hands of his wife in her lifetime.   His right of possession and occupancy is a statutory right incident to its exemption, or at least to its homestead character in her hands.   If such right were anything more than a merely personal one, if in any proper sense of the word it could be said to confer upon him a title or estate in the property or any right to its use or possession which he could transfer to another, there would be fair room for argument whether it could not be reached by creditors and subjected to the payment of his debts.   Lacking these qualities, he held no property right in the premises which could be made the subject of a judicial sale, and the trial court correctly sustained the demurrer to the second count of the petition.

It follows that the judgment appealed from must be, and it is, *affirmed.*