EVANS, C. J., DEEMER and PRESTON, JJ., concur.

---

AALDERT VAN WECHEL et al., Appellants, v. FANNIE VAN
WECHEL et al., Appellees.

LIMITATION OF ACTIONS:  Ignorance of Fraud—"Discovery."
1   The time within which an action for relief on the ground of fraud
    may be brought commences to run:
       1.  Whenever the complainant has such knowledge or notice as
    would lead a reasonably prudent person to make inquiries which
    would disclose the fraud, and
       2.  Ordinarily, where the fraud consists in making conveyance
    of lands, whenever the deed is properly recorded.

    PRINCIPLE APPLIED:  A husband and wife had two minor
    children, a boy and a girl.  The wife died owning 320 acres of
    land.  The husband was appointed administrator, and, under pro-
    bate proceedings fully complying with all forms of law, the land
    was sold to satisfy a claim held by the husband against the estate,
    and the husband became the purchaser.  His deed was recorded in
    1883.  Until his death in 1914, a period of 31 years, he held open
    and notorious possession of said land under claim of absolute

492          VAN WECHEL v. VAN WECHEL.       [178 Iowa

ownership. This husband remarried. By his will he devised said
land for life to his widow, with remainder over to his four chil-
dren by this last wife. The two children by said former wife
reached their majority some 15 years prior to the death of their
father. As early as 1903, when they were both of full age, one of
them, who was above the average in intelligence, had revealed to
him in some suggestive way his *possible* interest in said land. He
knew his mother owned the land at her death. He secured an
abstract of title, had it in his possession for years, and obtained
a legal opinion that the father's title was good. The sister, as
early as 1905, learned of this knowledge on the part of her brother.
Neither said anything to their father about the land. In 1914,
after the death of the father, these two children, as plaintiffs,
sought to partition the land, on the claim that the purchase of
the land by the father was, as to them, a constructive fraud.
Held that, irrespective of the effect of the record of the probate
matters and the father's deed, the plaintiffs legally "discovered"
the fraud, if any, as early as 1905, and the five years provided
in Section 3332, Code, 1897, for questioning an administrator's
deed, had expired prior to bringing the action.

**PARTITION:** Joinder of Actions—Irregularity of Administrator.
2  Irregularities of an administrator in receipting for shares belong-
ing to his minor children, without authority so to do, may not
be corrected in an action by said children to partition lands for-
merly belonging to said estate and alleged to have been fraudu-
lently purchased by the father, even though the amounts so re-
ceipted for were in part the proceeds of such sale.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON,
Judge.

TUESDAY, NOVEMBER 21, 1916.

SUIT in equity for the partition of lands. Decree for
defendants, and plaintiffs appeal.—*Affirmed.*

*R. F. Blair, J. U. Sammis* and *C. C. Bradley,* for appel-
lants.

*Anthony Te Paske* and *George T. Hatley,* for appellees.

WEAVER, J.—The conceded facts may be stated as fol-
lows: Arend Van Wechel was three times married. His

first wife, Julia, died in 1872, leaving five children of that marriage. The second wife, Christina, died in 1880, leaving two children. Soon afterward, Arend married his third wife, Fannie, who survives him, with four children of that marriage. He died testate, March 2, 1914. At the time of his death, he held the apparent legal title to a half section of land. By the terms of his will, he devised a life estate in all the land to his widow, with remainder over to the four children of his last marriage. The plaintiffs in this proceeding are the children of the second marriage. All the children of the first and third marriages, together with the widow, are made defendants. The suit is in equity for a partition of the land above mentioned, and the controversy we have to consider arises in the following manner: At the date of her death, the second wife, Christina, held the legal title to the land in question. She died intestate, and her husband became the administrator of her estate, June 29, 1882. The land was then incumbered by a mortgage lien for $800. The deceased wife left no other property. The husband held the promissory note of the deceased for $2,500, with interest at 10 per cent from the year 1876, and for payment of this debt he filed a claim against her estate, also a further claim for interest alleged to have been paid by him upon the mortgage. One Carter was by the court appointed special administrator, for the purpose of passing upon the claim of the surviving husband. The special administrator approved the claim, and his action was confirmed by the court. On January 17, 1883, Arend Van Wechel, as administrator, filed a petition showing that the estate was without personal assets for the payment of claims, and asking an order authorizing him to sell the land for that purpose. A notice of the hearing upon said application was served upon the two children of the deceased wife. These children were then minors, and a guardian ad litem appeared and answered for them. On April 4, 1883, the petition was granted as prayed, and the sale ordered. Appraisers were appointed, and the administrator's bond fixed at $12,-

000. This bond was thereafter furnished. The appraisers reported the value of the land to be $6,400, and recommended that the tract be sold as an entirety. The sheriff, T. H. Dunham, was appointed a commissioner to make the sale. At the time when the court entered the order authorizing the sale, the administrator presented a written application, stating that he was the only creditor of the estate; that he and his two minor children were the only persons having any interest in the property; and asked the court for an order permitting and authorizing him to become a bidder at such sale, for the reason that thereby a better price for the property could be insured and the rights and interests of himself and the minor children be better protected. This application was approved, and permission granted the administrator to bid at the sale, "provided that the sheriff, T. H. Dunham, is employed in his official capacity to conduct such sale." The sale appears to have been duly advertised; and on the appointed day, Arend Van Wechel being the highest and best bidder, the property was struck off to him for the sum of $5,600, subject to the mortgage existing thereon. The sale and deed made in pursuance thereof were reported to and approved by the court. The deed was duly recorded, December 28, 1883. A complete record of all these proceedings and the successive steps taken and the orders made therein, appears to have been preserved upon the records of the court.

From the time Arend Van Wechel obtained the deed, in 1883, pursuant to said administrator's sale, he remained in possession of the property openly and notoriously, claiming to be the owner thereof, and exercising all ordinary powers and acts of ownership, until the time of his death, in the year 1914. The plaintiff Aaldert Van Wechel was born in the year 1878, and Gerridina Blezina Luchtenberg, in 1880, and both had arrived at their majority at least 15 years before the death of their father. The relations between the plaintiffs and their father appear at all times to have been amicable.

This action was begun September 18, 1914. Upon sev-

eral alleged grounds, plaintiffs claim that the sale and con-
veyance to Arend Van Wechel was fraudulent and void as
against them, and that they are the rightful owners of an
undivided two thirds of the land of which they pray a par-.
tition. The defendants resist the partition prayed for, and
assert title in themselves, relying therefor upon the admin-
istrator's sale and deed to their father, and upon the pro-
visions of his will, which has been duly probated. They also
plead the statute of limitations, and allege that plaintiffs
are estopped by their laches. They also plead title acquired
by adverse possession. The trial court found for the defend-
ants, and dismissed the bill. Plaintiffs appeal.

I. It is manifest from the foregoing statement that, if
the suit is barred by the statute, or if plaintiffs are estopped
by their laches, the decree below must be affirmed, without
regard to other questions raised in the pleadings and argued
in the briefs of counsel. For that reason, we give this issue
first consideration.

The several statutory provisions having more or less
direct application at this point are as follows: Actions for
the recovery of real property must be brought within 10
years after the cause thereof accrues. Code Section 3447,
Par. 7. Actions for relief on the ground of fraud in cases
formerly solely cognizable in chancery must be brought within
5 years. Code Section 3447, Par. 6. Actions for the recovery
of real estate sold by an executor or administrator cannot be
maintained unless brought within 5 years after the sale. Code
Section 3332. In actions for relief on the ground of fraud,
the cause of action will not be held to have accrued until
the fraud complained of shall have been discovered by the
party aggrieved. Code Section 3448. The time within which
actions may be brought, as provided in the general statute
of limitations, is extended in favor of minors and insane
persons for one year after the termination of such disability.
Code Section 3453.

This action was not begun until 31 years after the admin-

istrator's sale of the land and the approval thereof by the court and the making and recording of the deed which plaintiffs ask to be set aside. Moreover, it was not begun until some 13 years after both of them had arrived at their majority and could have brought suit in their own name and right. The obstacle to their recovery presented by these statutory limitations is recognized by counsel for appellants, who seek to avoid it by claiming the benefit of Code Section 3448, above cited. In other words, they say the action is not barred because the alleged fraud of which complaint is made was not discovered by the plaintiffs until within less than 5 years before suit was instituted.

The burden rests upon plaintiffs to establish this avoidance of the limitation by a preponderance of the evidence, and this, we are very clear, they have failed to do. The "discovery" of the fraud or wrong which will set the statute in motion does not necessarily mean actual and direct personal knowledge by the complaining party. It is sufficient if such party has such knowledge or notice as would lead a man of reasonable prudence to make inquiries which would disclose the fraud. *Piekenbrock v. Knoer,* 136 Iowa 534, 538. This is especially true where the fraud, if any, is constructive only, and there is no showing that the party charged with the alleged wrong fraudulently concealed the same from the one aggrieved thereby. *Gamet v. Haas,* 165 Iowa 565; *Cook v. Chicago, R. I. & P. R. Co.,* 81 Iowa 551; *District Twp. v. French,* 40 Iowa 601; *Heath v. Elliott,* 83 Iowa 357. And ordinarily, where the alleged wrong consists in making a conveyance or transfer of title to real estate, the record of such instrument and the constructive notice thereby imparted are held to charge all persons adversely affected thereby with knowledge thereof, and the period of limitation begins with such record. *Michel v. Walraven,* 92 Iowa 423; *Francis v. Wallace,* 77 Iowa 373; *Clark v. Van Loon,* 108 Iowa 250, 253; and cases there cited. But in the case now before us, the

1. LIMITATION OF ACTIONS: ignorance of fraud: "discovery."

application of the statute of limitations does not depend alone on the constructive notice imparted by the record of the deed or by the record of the judicial proceedings through or by which the sale and conveyance were procured. In the year 1903, while Arend Van Wechel was still living and still in exclusive possession of the property, and after plaintiffs had arrived at their majority, the plaintiff Aaldert Van Wechel, who is a man shown to be above the average in education and intelligence, had obtained from some source information sufficient to excite his interest concerning the title to this land, and he applied to a lawyer for advice. The lawyer having suggested the advisability of obtaining an abstract of title, Aaldert authorized him to procure one. This was done, and the abstract was afterward delivered to Aaldert himself, with an expression of opinion by the lawyer that the title was good in plaintiff's father. At the time of this transaction, or shortly thereafter, he communicated the substance of what he had learned to his sister, his coplaintiff in this action. The effect of this conceded fact is sought to be minimized by him by the statement that he himself only "partly" examined the abstract, and that he had no experience in making such examinations. But he did have information that the title to the land had been in his mother, and the very first action which such knowledge would have suggested to the mind of even a much less intelligent man than the plaintiff, could hardly have been other than the wisdom of investigating the records and other available sources of information, to ascertain whether that title had been in any manner conveyed or divested, and, if so, then to ascertain the manner thereof, and satisfy himself whether, as an heir of his mother, he had any legal or equitable rights in the premises. It is difficult to believe that, having sufficient information and interest to consult counsel and to obtain an abstract of title, he still did not examine the paper and ascertain therefrom as best he could the facts therein revealed.

But, if we accept his statement as literally true, it does not avoid the effect of the rule that he is held to have had the knowledge of all the facts which would have been disclosed by an investigation such as was reasonably suggested by the information he admits having received. He could not receive and hold the abstract for years and then plead ignorance of the facts therein shown. So far as appears, neither plaintiff ever approached their father with any inquiry or request for information upon the subject, and we cannot assume that he would not have told them the truth of the matter. If, out of filial respect or for other reason, they did not wish to open up the subject with him, the records of the district court and of the office of the recorder were open to their inspection, and any lawyer could have given them intelligent advice as to the effect of the probate proceedings in the administration of their mother's estate. These remarks apply with equal force to both plaintiffs. True, it was the brother who first instituted inquiry and obtained the abstract and advice of counsel. Aaldert says that he did not consult his sister upon the subject until May, 1905, and she admits that at that time her brother informed her of the abstract and brought the papers to her place, telling her what the lawyer had said upon the subject. It follows, in our judgment, that, even if doubt should be entertained as to the effectiveness of the notice imparted by the record of the deed and by the judgment and orders of the court in probate, to set in motion the statute of limitations, it must still be said that the cause of action accrued to both plaintiffs, upon their own showing, not later than May, 1905. Suit was not begun until nine years after that date, and was, therefore, effectually barred, under the provisions of Code Section 3332, limiting the time in which an heir of the deceased may recover real property sold by an administrator. So clear is the law in this respect that further discussion or citation of precedents is not called for.

II. Proof was offered tending to show some irregularity in the final accounting and discharge of Arend Van Wechel

as administrator, and that he receipted as the alleged guardian of his children for their shares in the

**2. PARTITION: joinder of actions: irregularity of administrator.** remnant of the estate when, it is said, he had never been appointed or qualified to so act. We think it unnecessary to consider or pass upon this complaint. All this occurred after the administrator's sale had been perfected, and, if due accounting for the proceeds was not made, this is not a proper action in which to seek it.

In view of the effect which we give to the statute of limitations, it is unnecessary for us to go into the question whether there was any fraud, actual or constructive, in the sale and conveyance, or to what extent the defenses of estoppel and adverse possession are available to the appellees. So far as we can see, the proceedings in probate were given all due publicity, and there was at no time any attempt to deceive the plaintiffs, or to conceal from them anything done in the premises. A right of action which has been held in abeyance for more than 30 years, and until the party charged with wrong is dead, ought not to have favorable consideration in the courts, except upon a very clear showing of right, together with a clearly sufficient excuse for the delay in asserting it.

The decree below is right, and it is therefore—*Affirmed.*

EVANS, C. J., DEEMER and PRESTON, JJ., concur.