# IN THE SUPREME COURT OF IOWA

No. 05–1753

Filed November 21, 2008

**PAMELA G. ROCK** and
**KEITH A. ROCK,**

      Appellants,

vs.

**ROSE WARHANK, BLUE GRASS FAMILY
MEDICAL CENTER a/k/a FAMILY MEDICAL
CENTER OF BLUE GRASS, ROBERT W.
HARTUNG, CENTER FOR BREAST HEALTH,**
and **GENESIS MEDICAL CENTER,**

      Appellees.

---

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, David H. Sivright, Jr., Judge.

Plaintiff in a medical malpractice case appeals the granting of a motion for summary judgment in favor of the defendants. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Robert Gallagher and David A. Millage of Gallagher, Millage & Gallagher, P.L.C., Davenport, for appellants.

Constance M. Alt, Sarah J. Gayer, and Tricia L. Hoffman-Simanek of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellee Robert W. Hartung, M.D.

Richard J. Trinrud of Brooks & Trinrud, Davenport, for appellee Rose Warhank, M.D.

Charles E. Miller and Diane Reinsch of Lane & Waterman, L.L.P., Davenport, for appellee Genesis Medical Center and Center for Breast Health.

**STREIT, Justice.**

Pamela Rock sued her doctors for failing to diagnose her breast cancer. She alleged their negligence caused her cancer to spread to her lymph nodes. The district court granted the doctors' motion for summary judgment holding the statute of limitations barred Rock's claim. The court of appeals affirmed. Because Rock could not have known, and would not have known through reasonable diligence, of her injury and its cause, as a matter of law, more than two years prior to filing her claim, we vacate the decision of the court of appeals and reverse the judgment of the district court.

## I. Facts and Prior Proceedings.

Pamela Rock noticed a lump in her left breast in May 2002. She called Dr. Warhank at the Family Medical Center in Blue Grass to have it examined. Rock was referred to the Center for Breast Health for a bilateral mammogram, which was performed on May 28. Rock had a follow-up appointment with Dr. Warhank on June 3. Dr. Warhank palpated Rock's left breast and located the lump. Dr. Warhank told Rock the mammogram was normal and not to worry about the lump.

Sometime on June 3 or 4, Rock received a call requesting she come in for additional views of her right breast. Rock went to the Center for Breast Health on June 4 and had additional views of the right breast taken. A technician told Rock an ultrasound was not necessary because what was seen in the earlier mammogram was no longer present. Rock reminded the technician she had a lump in her left breast and not her right breast. The technician assured Rock nothing was seen on the earlier mammogram of her left breast so she should not worry about the lump anymore. Dr. Hartung reviewed the radiology report of the right breast and advised Rock

in a letter dated June 5 that the additional views of the right breast showed no sign of cancer.

In September 2002, Rock was still concerned about the lump in her left breast. She made an appointment with Dr. Kelly at the Family Medical Center. Dr. Kelly told Rock the lump was "probably benign." Nevertheless, Dr. Kelly recommended a surgical consult and referred Rock to Dr. Congreve.

Dr. Congreve performed a fine-needle aspiration on September 25. Two days later, Dr. Congreve called Rock and told her the test was not normal and she needed to have a biopsy of her left breast. On October 8, 2002, Dr. Congreve performed the biopsy and diagnosed Rock with breast cancer. Rock met with Dr. Congreve on October 11. He informed her additional tissue in her left breast needed to be removed because he did not believe he got all of the cancer. On October 18, Dr. Congreve removed the additional tissue and six lymph nodes. Five of the six nodes were cancerous. Rock had an additional surgery to remove another six nodes, one of which was cancerous. Rock was also treated with chemotherapy.

Rock filed suit against Dr. Warhank and Dr. Hartung and their employers on October 5, 2004. She claims Dr. Warhank and Dr. Hartung failed to properly examine, diagnose, and treat the cancer in her left breast. As a result of this alleged negligence, Rock claims the cancer spread to six of her twelve lymph nodes causing additional medical treatment and expense and decreasing her life span.

The defendants filed a motion for summary judgment alleging Rock's lawsuit was barred by the statute of limitations. *See* Iowa Code § 614.1(9) (2003). The district court agreed and granted the motion. Rock appealed. We transferred the case to the court of appeals, which affirmed the district court. We granted further review and now reverse.

## II. Standard of Review.

A summary judgment ruling is reviewed for correction of errors at law. *James Enter., Inc. v. City of Ames*, 661 N.W.2d 150, 152 (Iowa 2003). Summary judgment is appropriate

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Iowa R. Civ. P. 1.981(3). A question of fact exists "if reasonable minds can differ on how the issue should be resolved." *Walker v. Gribble*, 689 N.W.2d 104, 108 (Iowa 2000). The party resisting the motion for summary judgment should be afforded every legitimate inference that can reasonably be deduced from the evidence. *Clinkscale v. Nelson Secs., Inc.*, 697 N.W.2d 836, 841 (Iowa 2005).

## III. Merits.

The issue before us is whether Rock's lawsuit was untimely. This case requires us to revisit the language of our statute of limitations for medical malpractice. Our goal is to ascertain legislative intent, which is determined by the words chosen by the legislature. *Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 309 (Iowa 2007). When the language of a statute is plain and its meaning clear, the rules of statutory construction do not permit us to search for meaning beyond the statute's express terms. *City of Waterloo v. Bainbridge*, 749 N.W.2d 245, 248 (Iowa 2008).

Under Iowa Code section 614.1(9), medical malpractice claims must be brought "within two years after the date on which the claimant knew, or through the use of reasonable diligence should have known . . . of the existence of, the injury . . . for which damages are sought." "Injury" within

the context of the statute is the physical or mental harm incurred by the plaintiff. *Langner v. Simpson*, 533 N.W.2d 511, 517 (Iowa 1995).

Previously, we held the statute of limitations begins to run as soon as the plaintiff knew or should have known of the physical or mental harm for which damages are sought. *Schlote v. Dawson*, 676 N.W.2d 187, 194 (Iowa 2004); *Langner*, 533 N.W.2d at 517. In *Rathje v. Mercy Hospital*, 745 N.W.2d 443 (Iowa 2008), we acknowledged our past cases may not have correctly captured the intent of the legislature. *Rathje*, 745 N.W.2d at 447. After reviewing over a hundred years of jurisprudence and the history of the tort reform movement, we came to the conclusion the statute of limitations for medical malpractice claims does not begin to run until the plaintiff knew, or should have known through reasonable diligence, of both the physical or mental harm *and its cause in fact. Id.* at 460–61. We held the plaintiff must have known, or should have known through reasonable diligence, the medical care caused or may have caused the injury. *Id.* at 461. However, it is not necessary for the plaintiff to discover the medical professional was negligent in order to trigger the statute of limitations. *Id.* at 462–63. The standard for summary judgment then is whether a reasonable fact finder could conclude Rock filed her claim within two years of when she first knew or should have known of her injury and its cause. *See Murtha v. Cahalan*, 745 N.W.2d 711, 718 (Iowa 2008) (stating "[e]ven if a fact finder concludes that [the plaintiff's] lump developed into cancer or her cancer progressed, i.e., she sustained an 'injury' for section 614.1(9) purposes, prior to the two-year period preceding the filing of her lawsuit, it is still a fact question under this record as to when she knew, or should have known, of that injury and its cause in fact"); *Rathje*, 745 N.W.2d at 463 (holding "a reasonable jury could find [the plaintiffs] did not know the cause of the harm until, at the earliest, April 27, 1999, the date the

gastroenterologist made a diagnosis of 'drug-induced hepatitis secondary to antabuse' ").

We filed *Murtha* on the same day as *Rathje*. *Murtha* provided an occasion to further refine our definition of "injury" when a plaintiff, as in this case, alleges negligent misdiagnosis. *See Murtha*, 745 N.W.2d at 715. In *Murtha,* we said

> the "injury" does not occur merely upon the existence of a continuing undiagnosed condition. Rather, the "injury" for section 614.1(9) purposes occurs when "the problem grows into a more serious condition which poses greater danger to the patient or which requires more extensive treatment."

*Id.* at 717 (quoting *DeBoer v. Brown*, 673 P.2d 912, 914 (Ariz. 1983)). Thus, two questions must be answered to determine when the statute of limitations begins to run under section 614.1(9) in a negligent misdiagnosis case. First, one must determine at what stage a plaintiff's condition became an "injury," i.e., when did the problem worsen so that it posed a greater danger to the plaintiff or required more extensive treatment. *Id.* Second, one must determine when the plaintiff knew, or should have known through reasonable diligence, of the injury and its cause in fact. *Id.* In *Murtha,* we said both of these inquiries are "highly fact-specific." *Id.* Consequently, as we said in *Murtha,* they cannot be resolved as a matter of law unless no reasonable fact finder could conclude the lawsuit was filed within two years of when the plaintiff knew or should have known of the injury and its cause.

Here, Rock alleges Drs. Warhank and Hartung's failure to properly diagnose her cancer in May and June 2002 when she reported a lump in her left breast caused her cancer to worsen and spread into her lymph nodes. *When* Rock's injury occurred must be determined by expert testimony. Since the parties in this action did not have the benefit of our *Murtha* and *Rathje* opinions when the motion for summary judgment was

argued before the district court, the record is absent of any such testimony. The record does not reveal when Rock's injury occurred. Thus, we are unable to answer the first *Murtha* question—when did the injury occur—as a matter of law.

However, we are able to partly answer the second *Murtha* question—when did Rock know of her injury and its cause, or when should Rock have known of her injury and its cause through reasonable diligence—as a matter of law. Rock could not have known, and should not have known, of her injury and its factual cause until the day she was diagnosed with cancer *at the earliest.* The defendants contend Rock knew or should have known of her injury and its cause no later than June 3 when Rock discussed the lump with Dr. Warhank. However, we rejected a similar contention in *Rathje.*[1] *Rathje*, 745 N.W.2d at 463. They alternatively claim Rock knew or should have known of her injury and its cause no later than September 27, 2002, when Dr. Congreve (the doctor providing the second opinion) told her the fine-needle aspiration was not normal. Under both of these theories, defendants claim her action is time barred because that date is more than two years before she filed suit.

Rock, on the other hand, contends she neither knew nor should have known of her injury and its cause until she was diagnosed with cancer on October 8, which is within two years of when she filed suit. We agree. In answer to the second *Murtha* question, Rock could not have known, and

---

[1]*Rathje* stands for the proposition that, at a minimum, a fact question exists as to when the plaintiff knew or should have known of her injury and its cause when her treating physician offers a reasonable—albeit incorrect—explanation for her symptoms. *Rathje*, 745 N.W.2d at 463. Rathje sued her physicians for negligently prescribing a drug which ultimately caused her liver to fail. *Id.* at 446. Although she was suffering physical harm (nausea, cramping, and acid reflux) more than two years before she filed suit, we held a reasonable fact finder could conclude no facts were available prior to the diagnosis of liver failure that would have alerted a reasonably diligent person her symptoms were caused by the drug. *Id.* at 463. This determination was based on the fact her doctor diagnosed her with peptic disease and duodenitis when she complained of her symptoms. *Id.* at 445.

would not have known through reasonable diligence, of her injury, the worsening of her cancer, or its cause in fact, the misdiagnosis, until she had been properly diagnosed with cancer at the earliest.

*Murtha* does not contradict the proposition that an individual in a misdiagnosis case could not have known, and would not have known through reasonable diligence, of her injury or its cause in fact until proper diagnosis. Although we rejected Murtha's argument "that she did not suffer an 'injury' until she was diagnosed with cancer," we did not foreclose the possibility a reasonable fact finder could conclude she neither knew nor should have known of her injury—the spread of cancer—until diagnosed with cancer.[2] *Murtha*, 745 N.W.2d at 714–15.

Common law notions of inquiry notice should not be incorporated into the statute.[3] Although our dicta in *Rathje* implies the statute of limitations is triggered as a matter of law at the start of an investigation into the existence of the injury,[4] the plain language of the statute, that the claimant

---

[2]Like Rock, Murtha had a fine-needle aspiration that was "[n]ot within normal limits." *Murtha*, 745 N.W.2d at 712. Murtha's doctor recommended returning in six months for a follow-up mammogram. *Id.* That mammogram revealed "no definite abnormality," but "the radiologist recommended an ultrasound or biopsy be performed to ensure the lump was not malignant." *Id.* Murtha's doctor also "suggested the option of surgically removing the lump to alleviate any concerns Murtha may have about it in the future." *Id.* at 713. Murtha declined to have the lump removed at that time. *Id.*

[3]In interpreting Iowa Code section 614.4 (2008), the statute of limitations for fraud, mistake, and trespass, we have held the term "knowledge" includes not only actual knowledge but also knowledge that has been imputed from the date of inquiry regardless of whether there is a diligent investigation. *Anderson v. King*, 250 Iowa 208, 214–15, 93 N.W.2d 762, 766 (1958); *Van Wechel v. Van Wechel*, 178 Iowa 491, 496, 159 N.W. 1039, 1041 (1916); *E.B. Piekenbrock & Sons v. Knoer*, 136 Iowa 534, 538, 114 N.W. 200, 202 (1907).

[4]It was undisputed Rathje "knew she was suffering from physical harm" more than two years before filing suit. *Rathje*, 745 N.W.2d at 463. The case turned on whether she knew or should have known of the *cause* of her injury. *Id.* It was not necessary in *Rathje* to determine as a matter of law that the statute of limitations is triggered when a plaintiff begins an investigation into a potential injury and its cause. In *Rathje* we said "a reasonable jury could find [the Rathjes] did not know the cause of the harm until, at the earliest, April 27, 1999, the date the gastroenterologist made a diagnosis of 'drug-induced hepatitis secondary to Antabuse.' " *Id.* Applying common law notions of inquiry notice, the

"knew, or through the use of reasonable diligence should have known," does not support charging the claimant with common law inquiry notice. Iowa Code § 614.1(9). Under the statute, the clock begins ticking when the claimant has actual knowledge of her injury and its cause or "*through* the use of reasonable diligence should have known" of the injury and its cause. *Id.* (emphasis added). The latter provision simply prevents the tolling of the statute of limitations if a claimant *fails* to use reasonable diligence. In other words, the "reasonable diligence" component adds an objective standard of knowledge to the statute to prevent a plaintiff from benefiting from willful or reckless ignorance.[5] The word "through" in the context of the statute means "by way of," "by means of," or "because of." Merriam-Webster's Collegiate Dictionary 1226 (10th ed. 2002). It could also mean "to completion, conclusion, or accomplishment." *Id.* Replacing the word "through" in section 614.1(9) with the clause "at the beginning of" as *Rathje* suggests makes the statute nonsensical because it is not until the conclusion of an investigation that a plaintiff "should have known" of her injury and cause.[6]

It is inconsistent with the plain language of the statute to charge Rock—a layperson—with knowledge of facts before Dr. Congreve—an expert—knows these facts or conveys them to her. If we were to hold the statute of limitations begins to run at the start of an investigation into the existence of a possible injury, then the statute would always be triggered

---

statute of limitations would have been triggered as a matter of law on the previous day, when blood tests revealed "abnormal results" because that is the date that began her investigation into the cause of her injury. *See id.* at 446.

[5]No one disputes Rock used "reasonable diligence" to determine her injury and its cause in fact.

[6]Here is *Rathje*'s modified version of the statute: "after the date on which the claimant knew, or [at the beginning of] the use of reasonable diligence should have known . . . of the existence of, the injury" and its cause. Iowa Code § 614.1(9).

prior to the date the plaintiff gained actual knowledge of the injury unless the injury was immediately apparent. Such a holding would eliminate any reasonable application of the discovery rule in medical malpractice claims. Moreover, the cases relied upon in *Rathje—United States v. Kubrick*, 444 U.S. 111, 100 S. Ct. 352, 62 L. Ed. 2d 259 (1979); *Franzen v. Deere & Co.*, 377 N.W.2d 660 (Iowa 1985)—do not stand for the proposition that the statute of limitations begins to run at the start of an investigation into a possible injury. Instead, both cases hold the statute is triggered once the plaintiff knows of her injury and its cause. *See Kubrick*, 444 U.S. at 122, 100 S. Ct. at 359, 62 L. Ed. 2d at 269 (stating the statute of limitations is triggered once the plaintiff is "in possession of the critical facts that he has been hurt and who has inflicted the injury"); *Franzen*, 377 N.W.2d at 663 (stating the statute of limitations began to run on the date of the injury because the plaintiff "knew the instrumentality that caused the injury at the time it occurred" and "knew the injury was caused when [plaintiff] became entangled in the beaters of the forage wagon"). Thus, the clause "through the use of reasonable diligence should have known" does not charge a patient with knowledge that could not have been reasonably discovered at the time. Iowa Code § 614.1(9).

Finally, we must adhere to the bedrock principle we use when interpreting statutes of limitations: "When two interpretations of a limitations statute are possible, the one giving the longer period to a litigant seeking relief is to be preferred and applied." *Orr v. Lewis Cent. Sch. Dist.*, 298 N.W.2d 256, 261 (Iowa 1980). We rely on this principle because statutes of limitations are disfavored. *Id.*

Notwithstanding the lack of evidence in the record regarding when Rock's injury occurred, we conclude the record does establish as a matter of law that Rock could not have known, and would not have known through

reasonable diligence, of her injury  (the spread of cancer) and its cause (the misdiagnosis) more than two years prior to filing this action.  Summary judgment was improperly granted.

### IV.    Conclusion.

We conclude summary judgment was not appropriate in this case because as a matter of law Rock filed suit within two years of when she knew or should have known of her injury and its cause in fact.  We reverse and remand for further proceedings.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except Ternus, C.J., and Cady, J., who concur specially and Baker, J., who takes no part.

**TERNUS, Chief Justice (concurring specially).**

I concur in the court's conclusion that Rock neither "knew, [nor] through the use of reasonable diligence should have known . . . of the existence of, [her] injury" until, at the earliest, she was informed she had cancer. Iowa Code § 614.1(9). I do not concur in the gratuitous and inconsistent discussion regarding inquiry notice.

Cady, J., joins this special concurrence.