# IN THE COURT OF APPEALS OF IOWA

No. 19-1566
Filed July 22, 2020

**META CROW,**
        Plaintiff-Appellant,

**vs.**

**SARVENAZ JABBARI, M.D.,**
        Defendant-Appellee.

_____

Appeal from the Iowa District Court for Johnson County, Chad A. Kepros, Judge.

A patient appeals the grant of summary judgment for the doctor in her medical malpractice suit. **AFFIRMED.**

Jason S. Rieper of Rieper Law, P.C., Des Moines, for appellant.

Frederick T. Harris and Jeffrey R. Kappelman of The Finley Law Firm, P.C., Des Moines, for appellee.

Considered by Tabor, P.J., and May and Greer, JJ.

**TABOR, Presiding Judge.**

Meta Crow contends the district court was wrong in finding she waited too long to file her medical malpractice lawsuit against Dr. Sarvenaz Jabbari. Crow asks us to reverse the summary judgment, urging that a genuine issue of material fact exists as to the date she was on notice of her claimed injury and its cause in fact. Crow also argues we should find that her designated experts are qualified to address the standard of care.

Because no reasonable fact finder could conclude that Crow filed her lawsuit within two years of when she was on notice of her injury caused by an alleged misdiagnosis, the statute of limitations barred her action. Because the statute bars her claim, we need not reach the expert-opinion issue.

## I. Facts and Prior Proceedings

Viewed most favorably to Crow, the facts reveal the following events relevant to our consideration of this summary-judgment appeal. *See generally Christy v. Miulli*, 692 N.W.2d 694, 698 (Iowa 2005) (viewing entire record in light most favorable to nonmoving party).

An explosion at the Centro manufacturing plant in North Liberty caused employee Crow to suffer a burn and a blast injury to her right arm.[1] Crow sought treatment for the open wound at the Mercy Hospital emergency room in the early morning hours of January 27, 2013.

For her follow-up care, Crow visited Dr. Jabbari, a board-certified occupational medicine physician at Mercy Occupational Health in Coralville.

---

[1] Centro is a plastic manufacturing company. Crow's job there was to inspect and finish tank molds.

Dr.Jabbari saw Crow four times during January and February 2013. During her first visit, Crow described considerable pain, so the doctor mandated light-duty restrictions as she returned to work. At her second appointment, Crow exhibited an increased range of motion but still reported having pain fifty percent of the time. Making a fist and moving her fingers intensified the pain. By her third visit, Crow's pain had decreased. So the doctor approved her returning to work without restrictions.

But during her last visit with Dr. Jabbari, on February 20, 2013, Crow presented a major change in symptoms from the previous visits. Tearful, Crow reported experiencing pain at all times. Dr. Jabbari encouraged Crow to visit her primary care doctor for further evaluation and treatment. Dr. Jabbari added these recommendations:

> She was advised that if her pain is exacerbated by the cold, this might be indicative of a personal condition. The patient was also encouraged to get a rigid wrist brace and have the brace molded to the neutral position and wear this when she is sleeping. The patient was encouraged to see either the Internal Medicine Clinic or Urgent Care expeditiously . . . .

Despite Crow's new concerns, Dr. Jabbari discharged her "[b]ecause the patient's wound is well healed and is not likely that she had any deeper wounds than the superficial skin . . . . She is to return to work without restrictions." Crow contends when she sought more care from Dr. Jabbari, she refused and said, "I was only hired to take care of your burn."

After her release from Dr. Jabbari's care, Crow continued to feel pain in her wrist, forearm, and shoulder, as well as numbness and tingling in her fingers. Crow informed Jim Nelson, Centro's safety coordinator, that she needed more medical

care. Before she received that care, Centro fired Crow. As ground for the firing, her supervisors pointed to an incident when she placed a knife handle in her mouth at her work station. (Crow claimed she has "always used [her] mouth as a third hand.")

After her firing in February 2013, Crow's condition worsened. In late September 2013, Crow scheduled an appointment with Dr. Shalina Shaik in the primary care clinic at the University of Iowa Hospitals. At that appointment, Crow complained she had constant pain in her forearm. Crow told Dr. Shaik that she was unable to raise her arm, unable to move her fingers, and unable to engage in a range of movements using her elbow, wrist, and fingers. She also complained her skin felt cold and tingly. Dr. Shaik raised the possibility that Crow had Complex Regional Pain Syndrome (CRPS) and referred Crow to a pain specialist.

Following that referral, in October 2013, Crow visited Dr. Tejinder Singh for chronic pain and to evaluate the possibility she had CRPS. Dr. Singh recommended physical therapy and pain medications. Crow went to physical therapy in October and November but expressed frustration over the severe pain she experienced. In late December, Crow returned to Dr. Shaik. The doctor diagnosed Crow's pain as "multifactorial"—including carpal tunnel syndrome, osteoarthritis, and CRPS.

In her ongoing search for pain relief, Crow next visited Dr. Brian Adams, a physician on the orthopedic service at University of Iowa Hospitals. During that appointment on February 12, 2014, Dr. Adams assessed Crow as having CRPS on her right side with "possible overlapping carpal tunnel syndrome."

Because Crow was requesting continued treatment under the workers' compensation program, in April 2014, the case manager sent her for an independent medical examination (IME) with Dr. Joseph Chen, a rehabilitation physician. In Dr. Chen's opinion, Crow had "right forearm pain of indeterminate etiology" and not CRPS. Crow also continued to receive care from Dr. Singh, who eventually recommended a spinal column stimulator. Dr. Chandan Reddy implanted the device in April 2015. Crow estimated the procedure improved her pain symptoms by fifty percent.

In June 2015, Crow had another IME, this time with neurologist Richard Neiman. Dr. Neiman expressed frustration with Crow's original diagnosis and treatment, opining, "I absolutely have no idea why Dr. Jabbari basically released her to return to work with her ongoing symptoms." Also that June, Crow saw Dr. John Kuhnlein for an IME, as requested by her workers' compensation attorney. Dr. Kuhnlein opined that Crow "developed CRPS as a sequela" to the January 2013 blast injury to her arm. He also found it "unfortunate" that Dr. Jabbari treated only the burn and "ignored" other symptoms that made later, more invasive treatment necessary.

One year later, Crow filed a petition alleging professional malpractice by Dr. Jabbari and seeking compensable and punitive damages. The petition, dated June 6, 2016, alleged that Dr. Jabbari failed to properly diagnose and treat Crow's condition. To support her claim, Crow hired two experts—Dr. Neiman and Dr. Morris Fisher—both neurologists. They planned to opine that Dr. Jabbari should have sent Crow to a pain specialist or for physical therapy rather than refer her to a primary care physician.

Dr. Jabbari moved for summary judgment in July 2019. The motion advanced three arguments. First, she argued that Crow's action was barred by the two-year statute of limitations. Second, Dr. Jabbari claimed that Crow did not retain appropriate experts on the standard of care for occupational medicine. Third, the doctor urged that Crow did not have any evidence of willful and wanton conduct to sustain her claim for punitive damages.

In its ruling, the district court relied on *Rathje v. Mercy Hospital*, 745 N.W.2d 443, 460–61 (Iowa 2008), to hold that Crow knew of her injury and its cause in fact by February 2014—when she received a definitive diagnosis of CRPS from Dr. Adams.[2] Because that date was more than two years before she filed the malpractice suit, the statute of limitations barred her action. While recognizing its statute-of-limitations finding was dispositive, the district court still assessed Dr. Jabbari's argument that Crow's expert witnesses were not qualified. The district court believed it was "best left for the jury to decide the question of whether [Crow's] neurologist experts are qualified to assess whether Dr. Jabbari as an Occupational Medicine physician met [her] standard of care in the treatment decisions and guidance [she] offered."[3]

---

[2] In support of the statute-of-limitations argument, the defense points to these undisputed facts: (1) Dr. Jabbari did not diagnose Crow with CRPS; (2) Dr. Jabbari did not specifically treat Crow for CRPS; (3) Crow was displeased with the care provided by Dr. Jabbari; (4) Crow alleges her pain continued following being discharged from Dr. Jabbari's care; (5) Dr. Shaik first raised a concern of CRPS on September 26, 2013; and (6) Crow was diagnosed with CRPS by Dr. Adams on February 12, 2014.

[3] Crow argues the district court included "contradictory language" in its order on the issue of her proposed experts. In the order's fact section, the court states, "her experts are not qualified to speak to Dr. Jabbari's standard of care or [her] compliance therewith." We read that passage as conveying Dr. Jabbari's position and not reaching a legal conclusion.

Crow now appeals the grant of summary judgment for Dr. Jabbari.

## II.      Scope and Standard of Review

We review the district court's grant of summary judgment for correction of errors at law.  *See Kragnes v. City of Des Moines*, 714 N.W.2d 632, 637 (Iowa 2006).  Summary judgment is proper only if, viewing the evidence in the light most favorable to the nonmoving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Iowa R. Civ. P. 1.981(3).  We will find a question of fact "if reasonable minds can differ on how the issue should be resolved."  *Rock v. Warhank*, 757 N.W.2d 670, 673 (Iowa 2008) (quoting *Walker v. Gribble*, 689 N.W.2d 104, 108 (Iowa 2004)).  We afford the party resisting summary judgment every legitimate inference that we can reasonably deduce from the record.  *Id.*

## III.      Analysis

Crow contends the district court erred in determining that she knew or should have known the cause in fact of her injury before June 6, 2014.  The timeliness of her petition hinges on that date because the statute of limitations in a medical malpractice case is two years.  *See* Iowa Code § 614.1(9) (2016).  The triggering event for the limitations period is the date when the plaintiff has actual or imputed knowledge of both her injury and its cause in fact.  *Rathje*, 745 N.W.2d at 461.  This twin-faceted trigger must be revealed by sufficient facts to put a reasonably diligent Crow on notice to investigate.  *See id.*

Before reaching Crow's contention, we recall the definition of injury under section 614.1(9). "Injury" means the mental or physical harm incurred by the plaintiff. *Rock*, 757 N.W.2d at 673. When the allegation is negligent misdiagnosis, "injury" means more than a persistent undiagnosed condition. *Id.* (citing *Murtha v. Cahalan*, 745 N.W.2d 711, 717 (Iowa 2008)). The patient's injury—for purposes of section 614.1(9)—occurs when the condition grows more serious and poses more risk or requires more extensive treatment. *Id.*

So we ask—when was Crow on "inquiry notice" of her worsening condition as caused by Dr. Jabbari's alleged misdiagnosis? *Rathje* described this "should have known" component of section 614.1(9) as the point when "a plaintiff gains information sufficient to alert a reasonable person of the need to investigate 'the injury.'" 745 N.W.2d at 461. Arguably as early as September 2013, Dr. Shaik placed Crow on notice that she likely suffered from CRPS. At the latest, in February 2014, Dr. Adams offered Crow a clear CRPS diagnosis. As the district court held, "She had enough information at that point to investigate whether [Dr. Jabbari] was negligent based on discharging [Crow] from [her] care and from the [workers'] compensation coverage when there was ongoing pain and harm related to that accident."

Crow counters that even though she received the CRPS diagnosis in February 2014, the district court should not have assumed that she knew or should have known that Dr. Jabbari's negligence caused or contributed to her worsening condition. But Crow did not have to know that Dr. Jabbari's conduct was allegedly negligent or wrongful for the two-year limitations period to commence. *See Rathje*, 745 N.W.2d at 462–63 ("[T]he legislature clearly narrowed the discovery rule under

the statute to exclude any requirement that a plaintiff discover that the injury was caused by negligence or wrongdoing of the physician . . . . [W]e continue to adhere to the rule that the plaintiff does not need to discover that the doctor was negligent."). Crow's petition, supported by expert opinion, advanced the theory that Dr. Jabbari failed to diagnose her CRPS and failed to recommend physical therapy as treatment. Crow had actual knowledge of those failings before June 6, 2014. That knowledge warranted an investigation and served as the starting date for the statute of limitations.

We conclude summary judgment was appropriate because as a matter of law Crow did not sue within two years of when she knew or should have known about her injury and its cause in fact.[4]

**AFFIRMED.**

---

[4] Because Crow sued after the statute of limitations expired, we need not address the district court's findings about the qualifications of Crow's experts.